### In re INFINITY BROADCASTING CORPORATION SHAREHOLD-ERS LITIGATION

No. 594, 2001, 595, 2001.

Supreme Court of Delaware.

Submitted: April 17, 2002.
Decided: June 27, 2002.

15. Supr. Ct. R. 8; *Casalvera v. State,* 410 A.2d 1369 (Del.1980).

Brian P. Glancy of Hughes, Sisk & Glancy, P.A., Wilmington, Delaware; Michael G. Brautigam, pro hac vice (argued) for Proposed Intervenor Objector Below, Appellant.

William L. Garrett, Jr., Wilmington, Delaware; Richard B. Brualdi, pro hac vice (argued) for Appellants Linda Juarez and Anne M. Pezza–Fiorillo.

Norman M. Monhait of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Delaware; Pamela S. Tikellis of Chimicles & Tikellis LLP, Wilmington, Delaware; Arthur N. Abbey, pro hac vice (argued) for Plaintiffs Below–Appellees.

A. Gilchrist Sparks, III and Jon E. Abramczyk (argued) of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware for Appellees–Defendants David J. McLaughlin, William S. Levine, Arturo R. Moreno, Bruce S. Gordon, Jeffrey Sherman, George H. Conrades, Robert Downs Walter, Mel Karmazin, Farid Suleman, Sumner Redstone, Infinity Broadcasting Corporation and Viacom Inc.

Before WALSH, HOLLAND and STEELE, Justices.

PER CURIAM.

In October 2001, the Court of Chancery approved a settlement reached between Appellees, defendants-below, Infinity Broadcasting and Viacom, Inc. and Appellees, plaintiffs-below, Infinity shareholders in response to litigation challenging the fairness of a tender offer by Viacom. Before the merger, Viacom owned approximately 64 percent of the outstanding equity in Infinity. In August 2000, Infinity announced that Viacom had offered to acquire the remaining shares of Infinity common stock in return for Viacom common stock. The proposed exchange ratio was 0.564 shares of Viacom stock for each share of Infinity stock.

Almost immediately after the announcement, a number of Infinity's minority stockholders filed eleven separate actions in the Court of Chancery, each challenging the fairness of the Viacom offer. In addition, several similar suits were filed in other jurisdictions, including two suits filed by Appellants, intervenors-below, Linda Juarez and Anne M. Pezza–Fiorillo in the New York Supreme Court for New York County, which is the principal place of business for both Infinity and Viacom. Although the Delaware cases were consolidated into a single action, Juarez and Pezza–Fiorillo chose not to intervene here until they filed their challenge to the Court of Chancery's approval of a settlement of the consolidated suit and their petition for a portion of the Chancellor's award of attorneys' fees. The latter is at the heart of the appeal before us.

Less than three months after the announcement of the offer, the Delaware plaintiffs entered into a global settlement with Infinity on behalf of a class consisting of Infinity shareholders. Appellant, objec-

tor-below, Len Fernandes [1] objected to the settlement in the Court of Chancery on the grounds that its terms were unfair and tainted by inadequate class representation. He now appeals the Chancellor's decision overruling his objection. Appellants Juarez and Pezza–Fiorillo raise a separate issue on appeal, namely that the Chancellor erred in his allocation of an award of 2.25 million dollars in attorneys' fees to counsel appearing in the Delaware Action. Juarez and Pezza–Fiorillo contend that they conferred a substantial benefit to the class as a result of their prosecution of the New York litigation and that the Chancellor wrongly denied their counsel a share of that award. After considering those arguments, we find that the Chancellor based his decision on the correct interpretation and application of Delaware law and that his factual findings have ample support in the record. Therefore, we affirm the judgment of the Court of Chancery.

### The Delaware Action and Settlement

After Infinity shareholders filed eleven substantially identical complaints in the Court of Chancery, the court quickly consolidated the separate suits into a single action.[2] Each of these putative class actions alleged that Infinity, its board of directors, and Viacom breached their respective fiduciary duties of loyalty and care arising out of the factual assertion that the amount of Viacom stock offered as consideration for the merger was inadequate. In each instance, the proposed class consisted of all holders of Infinity common stock, excluding, of course, the defendants. The plaintiffs sought to enjoin the merger and to recover both compensatory and punitive damages, as well as attorneys' fees and costs. Once the court had consolidated the cases, the Chancellor appointed the law firms of Milberg Weiss Bershad Hynes & Lerach, LLP and Abbey Gardy & Squitieri as co-lead counsel and the Delaware firms of Chimicles & Tikellis and Rosenthal Monhait Gross & Goddess, P.A. as co-liaison counsel to oversee the prosecution of the Delaware Action.

Concurrent to the litigation, and similarly in response to Viacom's offer, Infinity appointed a special committee of independent directors to provide recommendations to its board of directors concerning the proposed merger and to conduct any necessary negotiations with Viacom's representatives. The record reveals that the special committee and Viacom engaged in extensive talks concerning the terms of the tender offer. Among the most highly contested issues was the exchange ratio, which the special committee actively sought to increase. Class counsel in the Delaware Action also engaged in negotiations with Viacom's representatives concerning the need for an increase in the exchange ratio as part of any potential settlement. In late October, Delaware counsel reached a settlement with the defendants that, *inter alia*, increased the exchange ratio from the 0.564 shares of Viacom stock it proposed at the outset of its bid to 0.592 shares per Infinity share. During that same period of time, the special committee and Viacom's representatives were reaching an identical resolution. On October 30, 2000, on the advice of its financial advisors,[3] the committee voted to

---

1. By order of this Court dated June 18, 2002 and pursuant to Supreme Court Rule 31, Sally Fernandes has been substituted for Appellant, objector-below, Les Fernandes in the above captioned appeal.

2. Hereinafter the "Delaware Action."

3. At an October 30, 2000 special committee meeting, the financial advisors informed the committee that they believed the negotiated exchange ratio to be fair, from a financial point of view, to the non-Viacom holders of outstanding Infinity Class A common stock.

recommend that the Infinity board of directors approve the merger at the same exchange ratio of 0.592 shares of Viacom stock per Infinity share. Shortly thereafter, the parties to the Delaware Action presented the settlement to the Court. In turn, the Chancellor approved it.

### The Fernandes Objection

■ Initially, we address Appellees' contention that Appellant Fernandes lacked standing to object to the settlement in the Court of Chancery. The transcript of the settlement hearing indicates that the parties chose not to present the issue of standing to the Chancellor during that proceeding. Although class counsel stated for the record that he was unwilling to concede Fernandes' standing, he admitted that the trial court did not necessarily need to decide the issue. Because counsel did not pursue the issue at that hearing and the record reveals no further inquiry into the standing issue, we find that it was not fairly presented to the Court of Chancery for decision. This Court generally will not address the merits of any issue not presented to the trial court and we find no compelling reason to depart from that standard in our consideration of this appeal.[4]

■ Any decision of the Court of Chancery regarding the fairness of a proposed settlement is within the discretion of that court and requires an application of its own business judgment.[5] This Court will review a decision regarding fairness only to the limited extent of determining whether "the findings and conclusions of the trial judge are supported by the record and [are] the product of an orderly and logical deductive process, [if so] they will be accepted."[6] We will not substitute our own business judgment for that of the Court of Chancery.[7] Fernandes contends that the Chancellor abused his discretion by approving a settlement that was unfair to the articulated class of Infinity shareholders. His principal argument rests on the notion that close scrutiny of the facts in the record reveals that the settlement provided nothing more than an illusory benefit that failed to adequately protect the rights of the class members. Specifically, he claims that this Court should hold that the illusory benefit is insufficient to extinguish the individual claims of members of the class and that it also precludes the Chancellor's award of any substantial attorneys' fees.

Fernandes argues that this Court need not look farther than the actual monetary value of the Viacom shares to find that alleged benefit to be, in essence, a sham. Because of a dramatic drop in the price of Viacom stock after the tender offer was announced, the actual cash value for Infinity's stockholders at the time of settlement was significantly reduced. In turn, he contends, this should have triggered an increase in the exchange ratio to maintain the cash-equivalent benefit conveyed to the stockholders.[8] This would be a persuasive

They later confirmed these opinions in writing.

4. Supr. Ct. R. 8.

5. *Rome v. Archer,* 197 A.2d 49, 54 (Del.1964).

6. *Polk v. Good,* 507 A.2d 531, 536 (Del.1986) (citing *Levitt v. Bouvier,* 287 A.2d 671, 673 (Del.1972)).

7. *Rome,* 197 A.2d at 54.

8. It is apparent from the record that the terms of the offer were not subject to an adjustment that would require a change in the exchange ratio to reflect the ongoing price of Viacom stock. Even if there had been, the record reveals that a general dip in the market similarly devalued Infinity and other companies.

argument, however, only if we were to consider the cash price at settlement to be the proper measure of the benefit conferred in a challenged stock-for-stock merger. In fact, our courts have found that the Court of Chancery need not limit itself to an examination of the immediate tangible results to a corporation or · its shareholders in determining the fairness of a settlement agreement.[9] The probable long-term benefits of the settlement are also properly considered.[10] Indeed, mergers like that at issue in this appeal are undertaken primarily in the anticipation of long-term benefits. Assuming a rational decision-making process, Viacom would only have tendered its offer for outstanding Infinity stock if it believed that the merger would produce a net increase in value. A short-term fluctuation in stock price does nothing to alter this extended outlook. Moreover this is a benefit that Infinity shareholders can reasonably expect to reap as new holders of Viacom stock. Therefore, it could fairly be concluded that the increase in the number of Viacom shares allotted to each class member as a result of the settlement produces a long-term benefit even where there is no triggered increase in the exchange ratio to reflect an updated market price fluctuation.

 Having established that the benefit received by the increase in stock ratio as a result of negotiation was more than illusory, we now turn to the question of whether the terms of this settlement should properly include an award of attorneys' fees. As Fernandes is quick to point

out, the timeline in the record shows that the Infinity special committee actively advocated an increased exchange ratio at the same time that class counsel sought an increase in the exchange ratio in the Delaware Action. The inference he suggests we must draw from this fact is that the special committee's work solely resulted in the benefit to the Infinity shareholders and that class counsel's efforts can fairly be considered redundant, insignificant or superficial. This disregards our well-established case law that, in the absence of evidence that the litigation did not result directly in a cognizable benefit to the class, we recognize a presumption that there is a causal relationship between the benefit and a timely filed suit.[11] Moreover, the settlement stipulation in the case at bar specifically states that Viacom "took into account the desirability of satisfactorily addressing the claims asserted in the [Delaware] Action in agreeing to increase the consideration to be conveyed to Infinity's public stockholders ... and as such the Action was a positive contributing factor in Viacom's decision to increase the Merger consideration." Even though this suggests that the Delaware Action was only a partial cause of the benefit received as a result of the increase, counsel applying for attorneys' fees do not need to show that they were the sole cause of a benefit conferred by settlement in order to have earned a fair, adequate and reasonable fee for their work on behalf of the class.[12]

 Fernandes also appeals the Chancellor's determination that the named

9. *Prince v. Bensinger,* 244 A.2d 89, 95 (Del.Ch. 1968).

10. *Id.*

11. *McDonnell Douglas Corp. v. Palley,* 310 A.2d 635 (Del.1973)

12. *In re Resorts Int'l S'holders Litig.,* Del. Ch., Civ. A. Nos. 9470, 9605, 1990 WL 154154, Hartnett, V.C. (October 11, 1990).

plaintiffs adequately represented the class as required by Court of Chancery Rule 23(a)(4) and implied in Rule 23.1.[13] We have held that the Court of Chancery's determination of the adequacy of a class representative is an "essential component" of the settlement approval process.[14] The Chancellor clearly addressed this issue both from the bench and in his final order approving the settlement, explicitly stating that the shareholder class had been adequately represented. Although Fernandes cites deposition testimony taken from class counsel that suggests limited contact and substantially passive involvement by certain named plaintiffs, a nominal plaintiff's lack of personal familiarity with an action is not determinative of that representative's adequacy.[15] Our case law requires little more than that a representative be generally familiar with the litigation.[16] Indeed, our legal system has long recognized the appropriateness of an attorney taking the dominant role in derivative proceedings.[17] Therefore, the mere fact that class counsel undertook the dominant role in this litigation in no way suggests that the class representatives must be found to have inadequately represented the class. We find that sufficient evidence exists in the record to support the Chancellor's conclusions on the adequacy of the named plaintiffs' representation.

## The Challenge to the Award of Attorneys' Fees

Juarez and Pezza–Fiorillo, on the other hand, do not, in this appeal, challenge the adequacy of the settlement or an award of fair, adequate and reasonable fees. Instead, they claim that the Chancellor erred as a matter of both law and fact by failing to assign or allocate a portion of the attorneys' fees actually awarded to counsel who solely participated in the New York litigation. Appellants first contend that the Chancellor based his ruling on an inaccurate interpretation of Delaware law. Juarez and Pezza–Fiorillo argue that the Chancellor ruled as a matter of law that only counsel who litigated before him in the Court of Chancery were entitled to a portion of the attorneys' fees, regardless of any benefit that may have been conferred by actions pursued in other jurisdictions. We fully agree that, had the Chancellor, in fact, ruled as alleged by Appellants, he would have incorrectly stated the law. Counsel pursuing litigation in any jurisdiction is entitled to a share of attorneys' fees in a settlement of a Delaware action if their efforts elsewhere conferred a benefit realized as part of the Delaware settlement.[18] Nevertheless, we do not read the Chancellor's final order and remarks from the bench to be an asserted deviation from or variation on a well-established principle of our corporate law. We find it clear on this record that

---

**13.** *See Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d at 1039, 1045 (Del.1996) (Rule 23.1 includes an implicit requirement that the named plaintiffs in a settlement class have adequately represented the class as a whole).

**14.** *Id.*

**15.** *In re Fuqua Indus., Inc. S'holder Litig.*, 752 A.2d 126 (Del.Ch.1999)

**16.** *Id.*

**17.** *Id.* In fact, as the Chancellor noted in *In re Fuqua Indus.*, allowing private attorneys to

bring suits on behalf of nominal shareholder is vital to the functioning of our partially privatized enforcement mechanism for policing fiduciaries. *Id.*

**18.** *See, e.g., Sanders v. Wang*, Del. Ch., 2001 WL 599901, C.A. No. 16640, Steele, V.C. (May 29, 2001) (let.op.) (denying attorneys fees to counsel who filed suit in New York on grounds that the New York action failed to contribute to the beneficial results of the Delaware litigation).

the basis for his ruling that New York counsel would not share in the fee award was not because they had failed to appear in the Delaware Action, but because the New York litigation neither promoted or influenced the global settlement in any meaningful way nor resulted directly in any benefit to the shareholder class.

We do not assign the same importance as Juarez and Pezza–Fiorillo to the Chancellor's comment from the bench that the only way counsel can be *assured* of a part of the award is to appear before the Court of Chancery and petition to become class counsel or co-counsel in Delaware litigation. Indeed, this is hardly a new statement of law. Instead we read it simply as a common sense statement of a readily observable fact, specifically intended for the *future reference* of counsel to whom he was denying fees. At no point does the Chancellor suggest that this was the basis for his decision. He merely voiced the rather obvious reality that the only *sure* way for *any* judge to know if, and to what extent, counsel have conferred a benefit in shareholder litigation is if they have actively appeared in front of him throughout the litigation. This in no way excludes any proper application for fees, including those arising from litigation in other fora, so long as counsel can substantiate that their involvement and efforts in other litigation resulted in a benefit to the class derived from the settlement.

■ Juarez and Pezza–Fiorillo allege that the language of the Chancellor's cover letter to his final order supports their claim that the Chancellor misstated the law. The single sentence to which they point in that brief letter states: "If New York counsel want to apply for counsel fees in the New York cases, that is up to them." First, we note that the cover letter accompanying an order is hardly the definitive place for a party to seek the legal underpinnings of a judge's ruling, especially when that actual ruling can be found in a detailed written order, supplemented by extensive comment from the bench on the ruling. To avoid other misguided inferences that some might seek to draw from the Chancellor's statement, we restate that our law allows counsel pursuing litigation in other jurisdictions to seek attorneys' fees in Delaware so long as their efforts elsewhere have conferred a benefit that contributed to the settlement of similar suits here. Here, the suggestion that the Chancellor ruled that the New York court was the sole forum in which counsel litigating there could seek a fee award is misleading. We conclude in light of the record in this case and the Chancellor's comments both from the bench and in his final order, that he neither based his ruling upon the premise asserted by Juarez and Pezza–Fiorillo, nor did he intend that the parties consider it to be the law of the case.

This Court cannot state with any assurance what prompted the Chancellor's almost tangential comment in that letter. However, we can speculate that it was in part a result of the frustration that accompanies chimeric claims for awards of attorneys' fees. As we discuss *infra*, counsel for Juarez and Pezza–Fiorillo offered no substantial evidence to support their claim that they conferred a benefit on the class by positively affecting the settlement in Delaware which could entitle them to an allocation of the fee award. Despite invitations to join the Delaware litigation and represent the interests of their clients before the Court of Chancery, counsel chose not to intervene until the time arose to allocate a fee. While our courts welcome the intervention of any party, including attorneys with valid claims for attorneys' fees, we can certainly understand the Chancellor's impatience with hollow claims,

especially in light of the tendency for those claims to consume our limited judicial resources.

Since we find it clear that the Chancellor applied the correct legal standard, this Court must now turn to the secondary question of whether the Chancellor abused his discretion by determining that counsel for the New York litigants were not entitled to a share of the fee award. Juarez and Pezza–Fiorillo's claim that their attorneys are entitled to a portion of the fee award requires an analysis of the impact that the New York litigation had on the settlement of the Delaware Action. The determination of any award is a matter within the sound judicial discretion of the Court of Chancery.[19] A careful study of the record indicates that the Chancellor's decision not to award fees to counsel for the New York litigants is fully supported by the evidence that was before him and that, therefore, he did not abuse his discretion.

We have articulated several factors that the Court of Chancery must consider in determining any award of attorneys' fees. They include: (1) the results accomplished for the benefit of the shareholders; (2) the efforts of counsel and the time spent in connection with the case; (3) the contingent nature of the fee; (4) the difficulty of the litigation; and (5) the standing and ability of counsel involved.[20] All of the *Sugarland* factors are contingent upon the benefit at issue being *causally related to the efforts of counsel* in pursuing their action.

A number of factors in the record support the Chancellor's conclusion that counsel for the New York litigants failed to confer a benefit upon the class that would entitle them to an award of attorneys' fees. Because Juarez and Pezza–Fiorillo failed to participate in the Delaware litigation in any meaningful way, any evidence of a benefit must result from the impact of the New York litigation itself. When determining the amount and distribution of an award, the mere pendency of litigation alone does not establish the causal connection between counsel's efforts and changes in the merger terms that benefit the shareholder class. In this appeal, the record is devoid of evidence that the New York litigation in any way influenced the settlement approved by the Court of Chancery.

Juarez and Pezza–Fiorillo conceded at the settlement hearing that their counsel did not take part in any settlement negotiations with the special committee or the directors of the defendant corporations as part of their prosecution of their claims. More importantly, the record belies Appellants claims that they actively pursued the litigation in the New York Supreme Court. The mere fact that Juarez and Pezza–Fiorillo served document requests does not necessarily demonstrate "a seriousness of purpose and an intent to litigate hard" that would move the defendants to settlement, as Appellants contend; nor does their briefing and argument of a motion for expedited discovery. When it denied that motion, the New York Supreme Court made clear that it considered the proper forum for resolving this dispute to be the Court of Chancery. This is consistent with our reading of New York case law, which favors the resolution of corporate governance disputes in the state of incorporation, under the "internal affairs doctrine."[21] Although the record does not

19. *Johnston v. Arbitrium (Cayman Islands) Handels AG,* 720 A.2d 542, 547 (Del.1998).

20. *Sugarland Industries Inc. v. Thomas,* 420 A.2d 142, 149 (Del.1980).

21. *Hart v. GMC citing Mantei v. Creole Petrole-*

indicate that there was a formal stay in the New York proceedings, it is clear not only that the case was not actively prosecuted during the existence of the Delaware litigation, but that it presented a threat so insubstantial that it is unlikely to have had meaningful influence on the decision of Viacom and Infinity to settle the Delaware Action. We find that the Chancellor did not abuse his discretion when he denied Juarez and Pezza–Fiorillo's counsel a percentage of the attorneys' fees award under these circumstances.

The judgment of the Court of Chancery is affirmed.

*um Corp.,* 61 A.D.2d 910, 402 N.Y.S.2d 822 (N.Y.App.Div.1978).