**ALASKA ELECTRICAL PENSION FUND, Plaintiff Intervenor, Below, Appellant**

v.

**Stephen L. BROWN, Crady Family Trust, Michael Crady, Plaintiffs Below, Appellees,**

and

**Lyon Homes Inc., General William Lyon, William H. Lyon, Harold H. Greene, Arthur B. Laffer, Lawrence M. Higby, James E. Dalton, Richard E. Frankel, Gary H. Hunt and Alex Meruelo, Defendants Below, Appellees.**

**No. 85,2007.**

Supreme Court of Delaware.

Submitted: Sept. 19, 2007.
Decided: Dec. 21, 2007.

---

4. *Tyre v. State,* 412 A.2d 326, 330 (Del.1980).

R. Bruce McNew, Esquire, of Taylor & McNew, LLP, Wilmington, DE; Of Counsel: Kevin K. Green, Esquire (argued), of Coughlin Stoia Geller Rudman & Robbins, LLP, San Diego, CA, for Appellant.

Joseph A. Rosenthal, Esquire and Carmella P. Keener, Esquire of Rosenthal, Monhait & Goddess, P.A., Wilmington, DE; Of Counsel: Carl L. Stine, Esquire, of Wolf, Popper, LLP, New York City; Pamela S. Tikellis, Esquire, Daniel J. Brown, Esquire and Scott M. Tucker, Esquire, of Chimicles & Tikellis, LLP, Wilmington, DE; Of Counsel: Lee D. Rudy, Esquire (argued), of Schiffrin Barroway Topaz & Kessler, LLP of Radnor, PA, for Plaintiffs–Below, Appellees.

Catherine G. Dearlove, Esquire, Ethan A. Shaner, Esquire of Richards, Layton & Finger, P.A., Wilmington, DE; Of Counsel: Michael G. Yoder, Esquire (argued), of O'Melveny & Myers, LLP, Newport Beach, CA; S. Mark Hurd, Esquire, Alan J. Stone, Esquire and Kevin M. Coen, Esquire, of Morris, Nichols, Arsht & Tunnell, LLP, Wilmington, DE, for Defendants–Below, Appellees.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this appeal, we consider whether an out-of-state litigant should be awarded attorneys' fees and expenses in connection with the settlement of a Delaware corporate class action. Appellant, Alaska Electrical Pension Fund ("Alaska"), had filed a class action in California, alleging substantially the same claims as those alleged in the Delaware action. The Delaware plaintiffs agreed to settle their claims after they had negotiated a $7 per share increase in the disputed transaction. Appellant did not agree to settle at that price, and the price later increased another $9 per share.

Applying settled Delaware law, the Court of Chancery presumed that the Delaware action contributed to the initial price increase, and the court awarded fees to the Delaware plaintiffs. The Court of Chancery denied appellant a presumption of causation as to either the first or the second price increase. We hold that the Court of Chancery was correct with respect to the first price increase. But, because appellant was the only litigant opposing the transaction at the time of the second price increase, appellant was entitled to a presumption of causation. Accordingly, we remand this matter for further consideration of the attorneys' fees and expenses, if any, that should be awarded to appellant.

FACTS AND PROCEDURAL HISTORY

William Lyon Homes, Inc., a Delaware corporation headquartered in California, designs, builds and sells single family homes. Before the tender offer that precipitated this litigation, General William Lyon was Lyon Homes's Chairman, Chief Executive Officer and largest stockholder. Lyon owned approximately 48% of the company's stock and controlled slightly more than half the voting power. On March 17, 2006, Lyon announced a tender

offer to acquire the remaining stock for $93 per share. The tender offer included a waivable condition that at the expiration of the tender offer Lyon, together with certain trusts, would own 90% of the company's outstanding common stock. Lyon announced his intention to acquire the remaining shares through a short form merger after the tender offer.

The same day that the tender offer was announced, Alaska, a Lyon Homes stockholder, filed a complaint in the Superior Court of California. A few days later, individual stockholders filed two separate lawsuits in the Delaware Court of Chancery. The three actions purported to be class actions brought on behalf of all Lyons Homes public stockholders, and they alleged similar breach of fiduciary duty and disclosure claims relating to the tender offer. The Court of Chancery consolidated the two Delaware actions and granted expedited discovery. Alaska also moved for expedited discovery in California, and the California court directed Alaska to coordinate its discovery with the Delaware plaintiffs. Thus, both sets of plaintiffs reviewed the same 30,000 pages of documentation provided by Lyon Homes on March 29, 2006. Delaware plaintiffs also took three depositions between March 31 and April 3, 2006. Alaska made some effort to participate, but did not. Later, however, Alaska read all of the depositions taken by Delaware plaintiffs.

On April 10, 2006, the Delaware plaintiffs entered into a Memorandum of Understanding with Lyon and the other defendants, agreeing to a settlement they would present to the Court of Chancery for approval (the "Original Settlement"). Under the Original Settlement, Lyon agreed, among other things, to increase the offer price from $93 to $100 per share, and to provide additional disclosures. Lyon also agreed not to oppose an attorneys' fee award up to $1.2 million and the Delaware plaintiffs agreed not to seek more than that amount.

Despite invitations from the parties to the Memorandum, and encouragement by the California Court, Alaska declined to join the Original Settlement. Alaska did participate in the confirmatory discovery conducted by the Delaware plaintiffs, however, and on April 20, 2006, it sought a temporary restraining order in California to prevent consummation of the tender offer. The California court denied Alaska's motion.

Between April 24 and April 28, 2006, a major Lyon Homes stockholder, Chesapeake Partners Limited Partnership, began discussions with Lyon about the tender offer price. Chesapeake's participation in the tender offer was important to Lyon because without Chesapeake, he would be unable to acquire 90% of the outstanding stock. At some point during those negotiations, Chesapeake contacted Alaska to determine its position. Alaska advised that the revised offer price of $100 per share was too low and that a fair price would be between $108 and $126 per share. Shortly after that conversation, Chesapeake agreed to tender its shares at $109 per share, which became the final tender offer price.

On June 19, 2006, after the tender offer had been completed, the parties to the Delaware action filed a stipulation of settlement (the "Final Settlement"). Before the Final Settlement hearing, Delaware plaintiffs requested an award of the agreed upon $1.2 million in attorneys' fees, based solely on the disclosures obtained and the price increase from $93 to $100. On July 28, 2006, Alaska moved to intervene in the Delaware action for the purpose of presenting its own fee application. Alaska requested 66% of any fee ultimately awarded, on the theory that it was 50% responsible for the price increase to $100,

50% responsible for the additional disclosures, and 100% responsible for the price increase to $109. The Court of Chancery approved the Final Settlement, awarded $1.2 million to the Delaware plaintiffs, and denied Alaska's fee request. This appeal followed.

## DISCUSSION

■ Alaska contends that it was entitled to a presumption that its litigation contributed to the beneficial outcome achieved for the class. Alternatively, if it had the burden to establish its contribution to the result, Alaska argues that it should have been allowed limited discovery to meet that burden. We review the trial court's denial of attorneys' fees for abuse of discretion, but we review *de novo* the legal principles applicable to that decision.[1]

■ Delaware follows the American Rule, under which litigants ordinarily are responsible to pay their own attorneys' fees, regardless of the outcome of the lawsuit.[2] One well-established exception to the rule is the corporate benefit doctrine:

> Under this doctrine, a litigant who confers a common monetary benefit upon an ascertainable stockholder class is entitled to an award of counsel fees and expenses for its efforts in creating the benefit. This doctrine is premised on the theory that "all of the stockholders ... benefitted from plaintiffs' action and should have to share in the costs of achieving that benefit."[3]

To qualify for an award of attorneys' fees, counsel must show that, "the suit was meritorious when filed; action producing benefit to the corporation was taken by the defendants before a judicial resolution ...; and the resulting corporate benefit was causally related to the lawsuit."[4]

■ This appeal focuses on the causation requirement. When a case is litigated in Delaware, our courts "recognize a presumption that there is a causal relationship between the benefit and a timely filed suit."[5] To overcome this presumption, defendants have the burden of "demonstrating that the lawsuit did not in any way cause their action."[6] Where, as here, similar lawsuits are litigated in multiple jurisdictions, the presumption of a causal relationship generally applies only to the Delaware litigation.[7] As this Court explained in *In re Infinity Broadcasting Corp. Shareholders Litigation*, attorneys who litigate in other jurisdictions are entitled to share in a Delaware fee award, "if their efforts elsewhere conferred a benefit realized as part of the Delaware settlement."[8] But, they must substantiate their contribution to the result achieved.

■ There are several reasons why the Delaware plaintiffs are usually the only ones given a presumption of causation. First, it is reasonable to presume that, if the Delaware plaintiffs are able to negotiate a settlement, they, rather than out-of-state plaintiffs, are the ones who contributed to the benefit. Second, the Delaware

---

**1.** *Dover Historical Soc. Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1089 (Del. 2006).

**2.** *Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1044 (Del.1996).

**3.** *United Vanguard Fund v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del.1997) (Citation omitted.).

**4.** *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del.1980).

**5.** *In re Infinity Broadcasting Corp. Shareholders Litigation*, 802 A.2d 285, 290 (Del.2002), citing *McDonnell Douglas Corp. v. Palley*, 310 A.2d 635 (Del.1973).

**6.** *Allied Artists Pictures Corp. v. Baron*, 413 A.2d at 880.

**7.** *In re Infinity Broadcasting Corp.*, 802 A.2d at 292.

**8.** *Id.*

plaintiffs have been appearing in front of the Court of Chancery during the course of the litigation. Thus, even without evidence of their specific contribution to the result achieved, the trial court is able to determine an appropriate fee award based on its knowledge of the Delaware plaintiffs' activities in court. Finally, if the presumption were extended to all plaintiffs litigating similar claims in other jurisdictions, such a rule would encourage the filing of multiple "mere pendency" lawsuits, wasting judicial resources and making it more difficult to reach settlements.

■ Accordingly, with respect to the benefits achieved in the Original Settlement, Delaware law gave Delaware plaintiffs the presumption of causation and required Alaska to substantiate its contribution. The trial court's factual finding that Alaska did not contribute to the Original Settlement benefits is supported by the record. At best, Alaska's discovery mirrored the discovery conducted by the Delaware plaintiffs. Alaska posits that it was asked to join in the settlement at $100 per share because it contributed to that result. The trial court did not agree, finding that Alaska was asked to join in the settlement only because defendants wanted a global settlement. We are satisfied that the Court of Chancery acted well within its discretion in concluding that Alaska was not entitled to any fees with respect to the Original Settlement.

That does not end the matter, however. After the Delaware plaintiffs had agreed to the Original Settlement, the stockholder class received a substantial additional benefit when the tender offer price was increased from $100 to $109 per share. The Delaware plaintiffs acknowledge that they

played no role in achieving that second increase. They had already agreed to settle, and they did not attempt to renegotiate the Original Settlement based on their confirmatory discovery or any other subsequent events. Thus, the Delaware action had effectively concluded, and Alaska's action was the sole remaining litigation challenging the tender offer.

■ The question that arises in these unusual circumstances, is whether Alaska should be presumed to have contributed to the second increase. Because Alaska was the only remaining adversary, parity of reasoning requires that Alaska be given the same presumption of causation originally granted to the Delaware plaintiffs. The presumption of causation is based on the apparent connection between defendants' decision to improve the terms of a transaction and the existence of a lawsuit challenging that transaction. Here, any benefit achieved after the Original Settlement would appear to be related to Alaska's ongoing opposition to the tender offer price. Thus, Alaska should be presumed to have contributed to the increase from $100 to $109 per share.

We are not unmindful of the fact that Chesapeake negotiated the last price increase, and that both the defendants and the trial court credited the increase entirely to Chesapeake's unique leverage. The fact remains, however, that Chesapeake consulted with Alaska about stock values during those negotiations. Moreover, given the presumption of causation, it is defendants' burden to establish that the pending Alaska lawsuit did not in any way contribute to the higher price. On remand, all parties will have the opportunity to address this issue after appropriate discovery.[9]

9. Alaska complains that the trial court abused its discretion in denying limited discovery relating to causation. Alaska knew, or should have known, that it would be required to

establish its contribution to the benefit for the period before the Original Settlement. *See: In re Infinity Broadcasting Corp. Shareholders Litigation, Supra.* Because it failed to request

## CONCLUSION

For the foregoing reasons, we AFFIRM in part, and REVERSE in part, and REMAND for further proceedings in accordance with this decision. We recognize that this remand may impact the trial court's award of fees to the Delaware plaintiffs. We offer no opinion on the question of whether, if Alaska is awarded any fees, that award should be in addition to the amount previously awarded to the Delaware plaintiffs. We, likewise, offer no opinion on the related issue of whether any award of fees on remand should be paid in whole or in part by the defendants or by the Delaware plaintiffs (through a deduction in their fee award).

discovery until its motion for reconsideration, we find no abuse of discretion in denying that request. If defendants contest causation on remand, the trial court will be able to consider any request for discovery relating to that issue.