**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2831
_____

ELI MOR, derivatively on behalf of AMERISOURCEBERGEN CORPORATION and
individually on behalf of himself and all other similarly-situated shareholders of
AMERISOURCEBERGEN CORPORATION

v.

STEVEN COLLIS, RICHARD GOCHNAUER, RICHARD GOZON, EDWARD
HAGENLOCKER, KATHLEEN HYLE, MICHAEL LONG, HENRY MCGEE,
CHARLES COTROS, JANE HENNEY, and AMERISOURCEBERGEN
CORPORATION

Eli Mor,

Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:13-cv-00242)
District Judge: Honorable Richard G. Andrews
_____

Submitted under Third Circuit LAR 34.1(a)
March 17, 2016

Before:  CHAGARES, RESTREPO, and VAN ANTWERPEN, *Circuit Judges*

(Filed: July 7, 2016)

_____

OPINION[*]

_____

RESTREPO, *Circuit Judge*

On October 28, 2014, the District Court approved the parties' negotiated settlement of this shareholder derivative class action, reserving the issue of the amount of attorneys' fees to be awarded to plaintiff, Eli Mor. Although the District Court awarded attorneys' fees to plaintiff by Memorandum and Order filed July 1, 2015, the Court awarded substantially less than the uncontested fees requested by plaintiff that had been negotiated by the parties and included in the Stipulation of Settlement entered into by the parties ("Stipulation"). *See Mor v. Collis*, No. 13-0242, 2015 WL 4036167, *7 (D. Del. June 30, 2015). Mor has filed an appeal of that Memorandum and Order, and no party has filed opposition to this appeal.[1] For the reasons explained below, we vacate that portion of the Memorandum and Order awarding fees and expenses, and we remand for further proceedings consistent with this Opinion.

**I.**

_____

[*] This disposition is not an Opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Under the Stipulation, the parties mutually agreed that the fee request was fair and reasonable, plaintiff's counsel agreed to waive any right to seek or collect any award of attorneys' fees, or reimbursement of costs and expenses, exceeding $1,000,000 in total, and defendants agreed not to oppose the fee petition. *See* Stip. dated 8/15/13, at 7, ¶¶ 1-2. Thus, defendants are not participating in this appeal.

On February 15, 2013, Mor filed a Complaint in the District Court derivatively on behalf of AmerisourceBergen Corporation ("ABC" or "the Company") and individually on behalf of himself and all other similarly-situated shareholders of ABC, naming as defendants nine members of the Company's Board of Directors ("Board")[2] and ABC, as nominal defendant. The Complaint alleged the Board exceeded its authority under the Company's shareholder-approved Equity Incentive Plan ("Plan") resulting in a breach of fiduciary duties, waste of corporate assets, and unjust enrichment.

Mor's claims stemmed from his allegations that in 2012 the Board granted 758,810 stock awards to defendant Steven Collis, the Company's President, Chief Executive Officer and a Director, thereby exceeding the alleged 300,000-share limit permitted to be granted to any individual participant in one calendar year under the Plan. Mor claimed the Board members did not act in good faith toward the Company when they breached their fiduciary duties by approving these improper stock options and by filing with the U.S. Securities and Exchange Commission ("SEC") on January 18, 2013 a Proxy Statement ("2013 Proxy") allegedly containing materially false and misleading omissions that rendered shareholders unable to make informed decisions at the 2013 Annual Meeting of Stockholders.

On April 12, 2013, defendants filed a motion to dismiss plaintiff's Complaint, and the motion was subsequently briefed by the parties. In the meantime, on April 26 2013, non-party ICLUB Investment Partnership ("ICLUB") wrote the District Court advising of

---

[2] Plaintiff states that Director Douglas Conant was not named as a defendant because he joined the Board subsequently to the events challenged in the Complaint. *See* Pl.'s Br. 4 n.1.

3

a related action it had filed in the U.S. District Court for the Eastern District of Pennsylvania. Further, on July 11, 2013, KBC Asset Management N.V. ("KBC") moved to intervene.

The parties to this action entered into and filed the Stipulation of Settlement on August 15, 2013. The Stipulation states that on February 19, 2009, ABC's stockholders approved the Company's Management Incentive Plan which provides for a 300,000-share limit on grants of awards to eligible individuals in any calendar year commencing on or after January 1, 2009. On May 14, 2009, ABC's Board declared a two-for-one split of the outstanding shares of common stock, and on June 10, 2009, pursuant to its authority under the Plan, the Compensation Committee of the Board proportionally increased the maximum award limit to any eligible individual in any calendar year to 600,000 shares, effective June 15, 2009, to reflect the stock split. *See* Stip. 2, ¶¶ 1-3.

The Stipulation further states that on May 6, 2011, with its regular 10-Q filing with the SEC, ABC filed the renamed Equity Incentive Plan, amended and restated effective January 1, 2011, but this document did not reflect the Compensation Committee's June 10, 2009 adjustment of the 300,000-share individual limit to a 600,000-share individual limit. *Id.* at 2, ¶ 4. The Stipulation also reflects that the Compensation Committee granted Collis awards covering a total of 872,423 shares during the 2012 calendar year. *Id.* at 3, ¶ 8.

Ten days after the filing of plaintiff's Complaint, ABC filed on February 25, 2013 a Form 8-K with the SEC that attached an electronic version of a Written Consent of the Compensation Committee, dated June 10, 2009, that limited the grants of awards to

4

eligible individuals in any calendar year to 600,000 shares of common stock. *Id.* at 4, ¶ 12. The Stipulation reflects that defendants deny that they have breached any duty, or violated any law, or engaged in any wrongdoing, or have any liability arising out of the facts and circumstances described in plaintiff's Complaint. *Id.* at 4, ¶ 13. The Stipulation further acknowledges that the settlement is a result of arms' length negotiations to settle and resolve the dispute. *Id.* at 4, ¶ 15.

Under the Stipulation, defendants agreed to cancel "272,423 of the stock options awarded to Collis on November 14, 2012 pursuant to the Plan." *Id.* at 5, ¶ II(A)(1). The Stipulation also provides certain prophylactic corporate governance reforms for a period of at least five years, including the requirement that the General Counsel of the Company verify that all awards made under the Plan are compliant and certify that all amendments to the Plan have been disclosed in the Company's SEC filings.

The Stipulation further provides that plaintiff would file an application for an award of attorneys' fees and reimbursement of costs and expenses in an amount not to exceed $1,000,000, an amount which "[t]he Parties mutually agree[d] [was] fair and reasonable." *Id.* at 7. Defendants agreed not to oppose plaintiff's fee application so long as it did not seek an amount in excess of the agreed upon fee. Indeed, upon execution of the Stipulation, defendants paid the agreed-upon fee to plaintiff's counsel. Under the Stipulation, payment of the fee award is subject to plaintiff's counsel's obligation to make appropriate refunds or repayments to ABC in the event of any failure to obtain final approval of the settlement, if the amount of fees and expenses actually awarded is less

than the full amount of the fee award, or if the amount of fees and expenses is reduced by the Court. *Id.* at 8.[3]

The District Court dismissed the motion to dismiss and the motion to intervene by Order dated August 16, 2013, and the Court stayed the Stipulation of Settlement until such time as KBC had resolved its books and records request. On September 10, 2013, plaintiff moved to lift the stay. However, following briefing by the parties, on October 21, 2013 the Court declined to lift the stay and scheduled a status conference to be held on December 20, 2013.

On February 4, 2014, the Court of Chancery of the State of Delaware granted the Company's motion for judgment on the pleadings as to KBC's books and records demand pertaining to ABC's allegedly excessive grants of stock options in 2012, in that any shareholder derivative claims were made moot in light of ABC's aforementioned cancellation of the excess options. The District Court then scheduled another status conference to be held May 5, 2014. On July 23, 2014, counsel for KBC wrote the District Court to advise that the books and records demand had been resolved with respect to the excessive awards and that KBC no longer sought to intervene and did not object to the Court's consideration of the proposed settlement. The Court then entered an Order on August 6, 2014 preliminarily approving the settlement, and plaintiff moved for final approval of the settlement and award of attorneys' fees.

---

[3] Thus, plaintiff represents that if this appeal is unsuccessful, plaintiff's counsel will be required to reimburse defendants $450,000. *See* Pl.'s Br. 8.

ICLUB thereafter objected to the settlement and moved for its own attorneys' fees, which plaintiff opposed. By Order dated October 17, 2014, the District Court directed plaintiff and ICLUB "to submit, under oath, detailed time records related to this case for each of its attorneys, with their usual hourly billing rates." The parties agreed to revise the settlement language, and ICLUB withdrew its objection. Following a hearing on October 28, 2014, the District Court issued a Final Order and Judgment approving the settlement that same date, reserving the issues on attorneys' fees.

## II.

On July 1, 2015, the District Court filed its Memorandum and Order addressing plaintiff's and ICLUB's requests for attorneys' fees. The Court denied ICLUB's request for fees and awarded plaintiff attorneys' fees and expenses in the amount of $550,000.[4] The Court found that this litigation resulted in, among other things, the creation of a common fund equaling $5.048 million.

The District Court pointed out, "In diversity cases, we apply state rules concerning the award of attorneys' fees." *Mor*, 2015 WL 4036167, at \*2 (quoting *Sec. Mut. Life Ins. Co. of N.Y. v. Contemporary Real Estate Assocs.*, 979 F.2d 329, 331-32 (3d Cir. 1992)) (internal quotations omitted). Thus, the District Court applied Delaware law in determining its award of attorneys' fees in this diversity action.

The Court noted that, under Delaware law, "[i]n the realm of corporate litigation, the Court may order the payment of counsel fees and related expenses to a plaintiff

---

[4] Since this appeal only involves the District Court's award of fees and expenses to plaintiff, the denial of ICLUB's request for fees is not addressed herein.

7

whose efforts result in the creation of a common fund, or the conferring of a corporate benefit." *Id.* (quoting *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164 (Del. 1989) (citations omitted)). The common fund doctrine states that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1252-53 (Del. 2012) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted)).

The District Court noted that a determination of a reasonable award of attorneys' fees is within the Court's "sound judicial discretion." *Mor*, 2015 WL 4036167, at *3 (quoting *In re Infinity Broadcasting Corp. S'holders Litig.*, 802 A.2d 285, 293 (Del. 2002)). The Court considered the following factors, referred to as the *Sugarland* factors: "(1) the results accomplished for the benefit of the shareholders; (2) the efforts of counsel and the time spent in connection with the case; (3) the contingent nature of the fee; (4) the difficulty of the litigation; and (5) the standing and ability of counsel involved." *Id.* (quoting *Infinity Broadcasting*, 802 A.2d at 293); *see Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149 (Del. 1980).

After evaluating the relevant factors, the District Court "appl[ied] the percentage of the common fund method to determine a reasonable fee award." *Mor*, 2015 WL 40336167, at *5. In doing so, the Court pointed out that the agreed-upon $1 million fee award amounted to 19.8% of the common fund. The District Court recognized that "a court should give weight to an agreement regarding attorneys' fees," *id.* (quoting *In re Abercrombie & Fitch Co. S'holders Derivative Litig.*, 886 A.2d 1271, 1275 (Del. 2005)),

8

but stated that "the weight given derives from and depends on the court's sense of confidence that the negotiations over the fee agreement were conducted in good faith and had no effect on the other terms of the settlement," *id.* (quoting *In re Prodigy Commc'ns Corp. S'holders Litig.*, No. 19113, 2002 WL 1767543, *6 (Del. Ch. July 26, 2002)).

Despite finding "no doubt that the parties negotiated the settlement in good faith," the Court "believe[d] that the amount of attorney's fees agreed upon far exceed[ed] what [was] appropriate in this case." *Id.* Indeed, the Court stated that "but for the agreement, I would think $250,000 was about what reasonable attorney's fees would be." *Id.* Ultimately, however, the Court concluded: "In light of the Delaware Supreme Court's statements in *Americas Mining* regarding settlements that occur in the early stages of litigation, and according to my own business judgment, I think a reasonable fee award is $550,000, which is roughly 10% of the common fund plus $50,000 for the corporate governance reforms." *Id.* Mor has appealed from that portion of the District Court's July 1, 2015 Memorandum and Order awarding him $550,000 in attorneys' fees and expenses.

## III. [5]

---

[5] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1367(a). We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's award of attorneys' fees for an abuse of discretion, "which can occur if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 299 (3d Cir. 2005) (quoting *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001) (internal quotations omitted)). "The standards employed calculating attorneys' fees awards are legal questions subject to plenary review, but '[t]he amount of a fee award . . . is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous.'" *Id.* (quoting *Pub. Int. Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1184 (3d Cir. 1995) (internal quotations omitted)).

9

Mor does not argue that the District Court erred in choosing to apply Delaware law in this case. However, citing both federal and Delaware caselaw in his brief, Mor argues that the District Court's award in this action impermissibly deviates from governing law, whether federal law or Delaware law is applied. *See* Pl.'s Br. 21-22.

"State rules concerning the award or denial of attorneys' fees are to be applied in cases where federal jurisdiction is based on diversity . . . , provided such rules do not run counter to federal statutes or policy considerations." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 775 n.47 (3d Cir. 1990). In any event, in this appeal, as Mor suggests, *see* Pl.'s Br. 22 (citing *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App. 191, 196 (3d Cir. 2014) (non-precedential)), we need not decide what law governs an award of attorneys' fees since both federal law and Delaware law apply the percentage of the common fund approach in awarding attorneys' fees, and there is no sound reason to believe the result of this appeal would be different depending on the law applied. *See, e.g., Rite Aid*, 396 F.3d at 306 ("the percentage of common fund approach is the proper method of awarding attorneys' fees"); *Americas Mining*, 51 A.3d at 1258, 1261 (finding that, under Delaware law, an award of attorneys' fees in a case involving a common fund is properly based upon a percentage of the benefit achieved in the litigation and pointing out that federal cases consider reasonableness factors "which are similar to [the] *Sugarland* factors").

## IV.

Reviewing courts retain a special and predominant interest in the fairness of class action settlements and attorneys' fees awards. *Cendant*, 243 F.3d at 731. Thus, we have

an "interest as a reviewing court in ensuring that district courts fulfill their obligations and comply with [applicable] instructions and guidelines." *Id.* While "fee award reasonableness factors 'need not be applied in a formulaic way,'" *see In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 166 (3d Cir. 2006) (citing *Rite Aid*, 396 F.3d at 301)), district courts must "clearly set forth their reasoning for fee awards so that we will have a sufficient basis to review for abuse of discretion," *id.* at 166 (quoting *Rite Aid*, 396 F.3d at 301).

"There are two primary methods for calculating attorneys' fees: the percentage-of-recovery method and the lodestar method." *Cendant*, 243 F.3d at 732 (footnote omitted). The percentage-of-recovery method is generally favored in cases involving a common fund. *Id.* (citing *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir. 1998)). Indeed, "[t]he percentage-of-recovery method has long been used in this Circuit in common-fund cases." *Id.* at 734. As explained above, the District Court applied that method in determining the amount of fees and expenses to award plaintiff's counsel.

Mor argues, first, that the District Court misapprehended the facts relevant to his application for attorneys' fees and, second, that the Court abused its discretion by conducting a flawed and arbitrary percentage-of-recovery analysis. In support of his first contention, Mor initially argues that the District Court relied on an erroneous understanding of the inception of the case. In particular, he argues that the Court failed to recognize the degree of sophistication of this litigation.

11

In considering the complexity of the litigation, the District Court stated that "[t]he present case was less complicated than most shareholder derivative actions," noting that the "case was developed from public disclosures." *Mor*, 2015 WL 4036167, at \*4. The Court further stated that "this matter would have been an appropriate matter for a demand on the board." *Id.* The Court describes the underlying events in this case as "a 'one-off' mistake by ABC," and concludes that "ABC should, of course, have been more careful, but what happened here was not corporate malfeasance, it was corporate carelessness." *Id.* Therefore, the District Court found that "[t]he relative straightforwardness of this case suggests a smaller fee award." *Id.*

We cannot say that the District Court abused its discretion insofar as it described this case as neither legally nor factually complex. Plaintiff's Complaint alleged that defendants exceeded their authority by granting Collis stock awards during the 2012 calendar year greater than the maximum amount permitted under the Plan. Following the parties' negotiations and the filing of the Stipulation only six months after the Complaint was filed, the parties acknowledged, among other things, that the Compensation Committee of the Board increased the maximum total individual stock awards permitted in a calendar year, effective June 15, 2009, to 600,000 to reflect the stock split, s*ee* Stip. 2, ¶¶ 1-4, but the parties further acknowledged that Collis' awards covered a total of 872,423 shares during the 2012 calendar year, *id.* at 3, ¶ 8. While we recognize that other issues were involved, including the timing of the filing of the Written Consent disclosing the adjusted maximum individual stock awards permitted under the Plan and the need for corporate governance reforms, we agree that this litigation was not particularly

12

complicated and that was a factor to be considered in determining reasonable attorneys' fees to be awarded.

Nevertheless, as Mor points out, the record does not appear to support the District Court's assertion that "what happened here was not corporate malfeasance, it was corporate carelessness," *see Mor*, 2015 WL 4036167, at *4, and the District Court does not point to anything in the record supporting such a conclusion. While the record does not necessarily support the contrary conclusion, and the Stipulation reflects that defendants deny that they have breached any duty or engaged in any wrongdoing, *see* Stip. at 4, ¶ 13, the District Court's statement is not supported by the record.

Similarly, the record also does not support the conclusion that this was necessarily "a 'one-off' mistake," *Mor*, 2015 WL 4036167, at *4, and it is not clear what the Court relied on in making this assertion. In other words, the District Court points to nothing to support the implication that the type of events which plaintiff's Complaint challenged would not have occurred again.

Further, to the extent that the Court implies that a demand letter to the Board in this case would have resolved this dispute, again the District Court points to nothing in the record which supports that conclusion. As Mor points out, in defendants' motion to dismiss the Complaint, as well as in the Stipulation, defendants deny any Plan violation or wrongdoing actually occurred. Plaintiff further states that he did not make a demand upon the Board relating to excess stock awards because a majority of the Board members were incapable of objectively considering any such demand, rendering any such demand futile. S*ee* Pl.'s Br. 3 (citing A31, ¶ 42). Plaintiff points out that, among other things, at

13

the time plaintiff filed his Complaint, a majority of the Board either participated in the grants or, in Collis' case received the grants, *id.* at 3 (citing A31, ¶ 41; A32, ¶¶ 44-45). In any event, to the extent that by concluding that "this matter would have been an appropriate matter for a demand on the board," *see Mor*, 2015 WL 4036167, at *4, the District Court was implying that a demand would have resolved this case in the first instance, the Court failed to provide any basis for such a conclusion.

In considering the complexity of the litigation, the District Court also stated that the "case was developed from the public disclosures," and the Court asserted "the only complexity was the jockeying among the shareholders' attorneys for their pieces of the pie." *Id.* However, it is not clear what the District Court was relying on in making this assertion and suggesting that the alleged Plan violation would have been detected despite the investigation by plaintiff's counsel. While other related actions were filed by ICLUB and KBC, those actions were filed after plaintiff's counsel had issued a press release announcing their investigation into this issue, *see* A95.

Again, while the conclusion that this case was relatively uncomplicated is not per se an abuse of discretion, the aforementioned unsupported assertions by the District Court in support of its award of fees affected the weight the District Court gave to the relevant factors, and also could have had a significant effect on the Court's ultimate determination as to what amount of fees would be a reasonable award. Since the District Court failed to "clearly set forth [its] reasoning" in support of multiple factual assertions it provided in support of its award of attorneys' fees, we do not have a "sufficient basis to review for

14

abuse of discretion," *see AT&T Corp.*, 455 F.3d at 166 (quoting *Rite Aid*, 396 F.3d at 301), and a remand is warranted.

Mor next argues that the District Court undervalued the recovery obtained by plaintiff. In particular, Mor contends that although the District Court stated that it accepted that the benefit to ABC as a result of plaintiff's efforts resulting in the cancellation of stock options awarded to Mr. Collis had a value of $5.048 million, language in the Court's discussion belies that conclusion.

In discussing the benefit conferred to ABC, the District Court pointed out that, pursuant to the Stipulation, the Company cancelled the excess 272,423 stock options which had been awarded to Mr. Collis in 2012 and that plaintiff's and ICLUB's experts agreed that the spread value of those cancelled options, as of the cancellation date, August 7, 2013, would have been about $5.048 million. *See Mor*, 2015 WL 4036167, at *3. The District Court noted that it accepted plaintiff's argument "that the cancellation of Mr. Collis's excess stock options created a common fund in the amount of $5.048 million – the 'spread value' of the 272,423 cancelled options," *id.*, and the Court specifically stated that "for [the] purpose of this analysis, **I accept that the benefit to ABC is $5.048 million,**" *id.* at *4 (emph. added). Such a conclusion with respect to the benefit to ABC resulting from plaintiff's efforts is not an abuse of discretion.

The Court stated that it accepted this amount as the common fund benefit conferred in this litigation for purposes of its analysis, and we do not agree with Mor's contention that the District Court did not "truly factor into its analysis" the $5.048 million as the benefit conferred to ABC as a result of the cancelled excess options, *see* Pl.'s Br.

15

18.  Nevertheless, the following portion of the Court's Memorandum Opinion gives us pause:

> In my opinion, however, the common fund calculated by determining the spread value of the returned excess stock options overstates the significance of the recovery predicated as it is by the value of a volatile asset on the day it was returned. Once the various lawsuits and records demands were made in February 2013, the excess stock options were, for all practical purposes, frozen. They were going to end up back with ABC. On February 15, 2013, the stock closing price was $45.24 per share. The spread value then was $1,370,287.69. As of June 29, 2015, the per share value of ABC stock was about $106, more than double what it was on August 7, 2013. Thus, depending on the perspective taken, the benefit to ABC caused solely by this lawsuit is smaller than Plaintiff's argument suggests, as most of the benefit has arisen from the rapid appreciation of the stock. Nonetheless, for purpose of this analysis, I accept that the benefit to ABC is $5.048 million.

*Mor*, 2015 WL 4036167, at *4.  In light of the fact that the Court specifically "accept[ed]" the $5.048 million as "the benefit to ABC" for purposes of its analysis, *id.*, the District Court's purpose in including this discussion in support of its Memorandum Opinion is not altogether clear.  Moreover, among other things, the Court fails to provide a basis as to why conceptually freezing the value of the options at the time of this suit's inception, would be appropriate.  In any event, since the Court specifically indicated that it was considering the $5.048 million as the benefit conferred as a result of the cancellation of the options, any conclusions that may have been based on this alternative "perspective" shared by the District Court, would be error in that it is inconsistent with the District Court's explicit finding that the value to ABC of the cancellation of the

16

excess shares was $5.048 million and, moreover, the Court failed to provide any basis for using the value of the options at the time of this lawsuit's inception.

Finally, with regard to the District Court's factual findings supporting its award of fees, Mor argues that the Court failed to credit the significant majority of hours worked by plaintiff's counsel. Specifically, Mor complains that the Court ignored the hours spent litigating the case subsequent to the beginning of settlement discussions.

In considering the time and effort expended by plaintiff's counsel, the District Court found the following:

> The parties were in the very early stages of litigation when settlement discussions began, and settled the case before any discovery had commenced. Nevertheless, Plaintiff's counsel spent 63.5 hours on the case prior to filing the complaint, and another 172 hours through the motion to dismiss. Thus, Plaintiff's attorneys spent a total of 235.5 hours, amounting to around $150,000 in attorney's fees, prior to shifting their focus to settlement. The early stage at which the case settled, and the low number of hours spent prior to settlement, suggest a smaller fee award.

*Id.* at *4. The Court was correct in pointing out that settlement discussions began in the early stages of litigation. In fact, the parties filed the Stipulation only six months after the filing of plaintiff's Complaint, defendants' motion to dismiss never needed to be resolved by the Court, and there is no mention in the record before us that any depositions were taken.

However, the District Court did not explain why it ignored or failed to acknowledge the hours spent by plaintiff's counsel in connection with this case subsequent to "shifting their focus to settlement," *see id.* Plaintiff argues in his brief that

17

counsel worked 741 hours litigating the action, s*ee* Pl.'s Br. 20 (citing A138 ¶ 5; A218 ¶ 4), and that all of counsel's efforts "were necessary to the successful prosecution of this litigation," *id.* at 21.

In determining the amount of fees to award, the District Court considered the *Sugarland* factors. *See Mor*, 2015 WL 4036167, at *3 (citing *Infinity Broadcasting*, 802 A.2d at 293 (identifying the *Sugarland* factors)). As the District Court identified, *see id.*, the Supreme Court of Delaware has described the "time and effort" factor as "the efforts of counsel and the time spent in connection with the case." *See Infinity Broadcasting*, 802 A.2d at 293 (citing *Sugarland Indus.*, 420 A.2d at 149); *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (including "the amount of time devoted to the case by plaintiffs' counsel" as a factor to consider in setting a fee award). Here, the District Court neither explained why it only acknowledged about one-third of the total hours plaintiff allegedly spent in connection with the case, nor did the Court provide a basis or authority for doing so.

## V.

In addition to challenging the aforementioned factual conclusions upon which the District Court based its decision, Mor challenges the percentage-of-recovery analysis conducted by the Court, and also argues that the District Court's award of fees conflicts with public policy. Mor does not challenge the fact that the District Court applied the percentage-of-recovery method of calculation or the factors which the Court considered in determining the amount of a reasonable award. Rather, he argues that the District

18

Court failed to award an amount of fees within "the lower bound of the applicable range(s)" consistent with other cases. *See* Pl.'s Br. 22.

It is unnecessary for us to address the specific percentage of the benefit conferred by the District Court or whether it is consistent with public policy, in light of the fact that the case is being remanded for a proper consideration and re-weighing of the relevant factors based on facts supported by the record in this case consistent with this Opinion. Nevertheless, we point out that the Delaware Supreme Court in *Americas Mining* emphasized, "The percentage awarded as attorneys' fees from a common fund is committed to the sound discretion of the [trial] Court" who has "broad discretion" in applying the reasonableness factors under the circumstances of the case. *Americas Mining*, 51 A.3d at 1262; *see also Northeast Women's Ctr. v. McMonagle*, 889 F.2d 466, 475 (3d Cir. 1989) (The amount of a fee award is within the district court's discretion so long as it "employs correct standards and procedures, and makes findings of fact not clearly erroneous."). Thus, the Court in *Americas Mining* "decline[d] to impose . . . the mandatory use of any particular range of percentages," *see Americas Mining*, 51 A.3d at 1261,[6] and reaffirmed that "the multiple factor *Sugarland* approach to determining attorneys' fee awards remained adequate for purposes of applying the equitable common fund doctrine," *id.* at 1258 (citing *Goodrich v. E.F. Hutton Grp., Inc.*, 681 A.2d 1039,

---

[6] Although *Americas Mining* involved the Court's refusal to impose a mandatory range of percentages for determining fees in "megafund cases," the Court was clearly "reaffirm[ing] . . . [its] holding in *Sugarland* [which] set[] forth the proper factors for determining attorneys' fees awards in all common fund cases," *see Americas Mining*, 51 A.3d at 1261, and confirming that the "percentage awarded as attorneys' fees from a common fund is committed to the sound discretion of the [trial] Court," *id.* (citing *Chrysler Corp. v. Dann*, 223 A.2d 384, 386 (Del. 1966)).

1050 (Del. 1996)); *see also Cendant*, 243 F.3d at 736 ("These varying ranges of attorneys' fees confirm that a district court may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case."). "Delaware courts have assigned the greatest weight to the benefit achieved in litigation." *Americas Mining*, 51 A.3d at 1254.

In this case, for the reasons explained above, in considering the relevant reasonableness factors, the District Court failed to provide a sufficient explanation and based its award on certain factual assertions which appear to have no basis in the record and which certainly could have had a significant effect on the ultimate award of attorneys' fees. Therefore, to that extent, Mor is correct that the percentage-of-recovery analysis was flawed.

## VI.

Mor argues that the District Court failed to properly value the corporate therapeutics obtained by plaintiff. In discussing the benefit conferred as a result of counsel's efforts, the District Court acknowledged that, as a result of the Stipulation of Settlement, "ABC received an additional benefit in the form of corporate governance reforms that are intended to prevent future violations of the compensation limits provided by ABC's equity incentive plan." *Mor*, 2015 WL 4036167, at *4. Citing *Ryan v. Gifford*, No. 2213-CC, 2009 WL 18143, *10 (Del. Ch. Jan. 2, 2009), the District Court noted that "'significant corporate governance reforms designed to prevent future wrongful option grants' [are] 'properly considered by the Court in determining a fee award,'" *see Mor*, 2015 WL 4036167, at *4 (quoting *Gifford*, 2009 WL 18143, at *13),

20

and that "corporate governance reforms can provide a substantial corporate benefit, even if they are nonpecuniary in nature," *id.* However, the District Court's explanation for awarding $50,000 for the corporate governance reforms is inadequate in that it is unclear from the District Court's Opinion its basis for asserting that ABC's reforms resulting from this litigation were "modest," despite the fact that they appear to be significant therapeutic reforms to prevent future wrongful options from being granted. Without further explanation, it is not clear that the amount of the award for the negotiated corporate governance reforms is not arbitrary.

## VII.

For reasons explained above, the District Court's award of attorneys' fees and expenses was at least partially based on factual assertions which were not supported by the record, and the District Court failed to provide an adequate explanation in support of its award so that we, as a reviewing court, have a sufficient basis to review for abuse of discretion. Accordingly, that portion of the District Court's Memorandum and Order awarding plaintiff $550,000 in attorneys' fees and expenses is vacated,[7] and we remand to the District Court for an award of fees and expenses consistent with this Opinion.[8]

---

[7] In addition to awarding fees and expenses to plaintiff, the District Court's Memorandum and Order filed July 1, 2015 also denied ICLUB's petition for attorneys' fees, but this appeal only involves the District Court's award of fees and expenses to plaintiff.

[8] Plaintiff argues that he "incurred substantial expenses in the course of litigation that were not addressed in the [District Court's] Opinion, including $11,587 in expert fees, and totaling $14,606." *See* Pl.'s Br. 30. On remand, the District Court should address the issue of plaintiff's expenses in awarding attorneys' fees and expenses. *See Goodrich*, 681 A.2d at 1045 ("[Plaintiff's] attorneys, whose efforts resulted in the creation of [a]

21

common fund, are entitled to receive a reasonable fee and reimbursement for expenses from that fund.").