**COURT OF CHANCERY**
OF THE
**STATE OF DELAWARE**

ANDRE G. BOUCHARD
CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: March 26, 2015
Date Decided: June 5, 2015

Stuart M. Grant, Esquire
Michael J. Barry, Esquire
Grant & Eisenhofer, P.A.
123 Justison Street
Wilmington, DE 19801

James R. Banko, Esquire
Faruqi & Faruqi LLP
20 Montchanin Road, Suite 145
Wilmington, Delaware 19807

David A. Jenkins, Esquire
Smith, Katzenstein & Jenkins LLP
800 Delaware Avenue, Suite 1000
Wilmington, DE 19899

Gregory V. Varallo, Esquire
Richard P. Rollo, Esquire
Kevin M. Gallagher, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Bradley R. Aronstam, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, Delaware 19801

RE: ***In re Jefferies Group, Inc. Shareholders Litigation***
Consolidated C.A. No. 8059-CB

Dear Counsel:

On March 26, 2015, I entered an order approving the settlement of this class action

after taking two matters under advisement during a hearing held on March 25, 2015: (1)

Delaware Counsel's application for an award of attorneys' fees and expenses, and (2)

New York Plaintiffs' motion for a share of the fee award.[1]  This is my decision on those matters.

### 1.      Background

This action arose out of the stock-for-stock merger of Jefferies Group, Inc. ("Jefferies") and Leucadia National Corporation ("Leucadia") that closed on March 1, 2013.  In the merger, each share of Jefferies was exchanged for 0.81 shares of Leucadia.  This ratio implied consideration valued at $17.01 per share of Jefferies, a 19% premium over the closing price of Jefferies common stock on the day before the announcement of the transaction.

On November 14, 2012, two days after the transaction was announced, the first of seven actions challenging the proposed transaction was filed in New York state court.  After some initial activity in New York, this case proceeded in Delaware.

The gravamen of Plaintiffs' case was a straightforward theory of alleged conflicts of interests affecting four of the eight members of the Jefferies board that, if proven, could result in the application of the entire fairness standard.  As Plaintiffs explained it:

---

[1] Delaware Counsel consists of four law firms that were named as co-lead counsel in this action under a consolidation order entered on January 29, 2013:  Bernstein Litowitz Berger & Grossmann LLP, Grant & Eisenhofer, P.A., Saxena White, P.A., and Faruqi & Faruqi, LLP.  The New York Plaintiffs, who pursued related litigation in New York discussed below, are Howard Lasker IRA, Dr. Robert Lowinger and Michael Jiannaras.  New York Counsel consists of the following three law firms:  Robbins Geller Rudman & Dowd LLP, Abraham, Fruchter & Twersky, LLP, and Stull, Stull & Brody.

> Plaintiffs alleged that the Transaction was tainted by conflicts affecting half of the Jefferies board of directors and as a result had to meet the exacting standards of the entire fairness standard under Delaware law. Specifically, the Merger came together with Leucadia's co-founders and Jefferies directors Ian M. Cumming and Joseph S. Steinberg negotiating on behalf of Leucadia, and Jefferies Chief Executive Officer and Chairman Richard B. Handler and Jefferies director and Chairman of its Executive Committee Brian P. Friedman supposedly representing Jefferies, but only after assuring themselves coveted leadership roles at Leucadia following the Merger. In other words, Plaintiffs' core theory was that the Merger was negotiated by Leucadia's past and future leadership, with nobody properly representing Jefferies' stockholders.[2]

Defendants argued strenuously that the business judgment rule should govern this case because, among other things, a transaction committee of independent directors working with an independent financial advisor (Citigroup Global Markets, Inc.) had recommended the merger, four of the six directors on the Jefferies board who ultimately approved the transaction (Steinberg and Cumming recused from the vote) were free of conflict, and a majority of the company's disinterested stockholders approved the transaction in a fully-informed vote.

Delaware Counsel did not seek expedition, instead making a tactical decision to litigate the case as one for damages. Plaintiffs survived a motion to dismiss decided by then-Chancellor Strine, although he dismissed their claim that Leucadia was a controlling stockholder. Plaintiffs also survived a motion for summary judgment (except for one claim that was dismissed) that I decided from the bench on September 16, 2014. At the

---

[2] Pls.' Op. Br. at 1-2 (defined terms omitted).

conclusion of that hearing, I explained that the existence of factual disputes over certain issues precluded me from determining whether the business judgment rule or the entire fairness standard would apply and that, depending on how those factual disputes were resolved, I could see either standard coming into play.

On October 31, 2014, about five weeks before trial was scheduled to begin, the parties reached an agreement-in-principle to settle the case. The settlement, which I formally approved on March 26, 2015, will result in a payment of $70 million in cash to the Class.[3] This is a net amount. The parties structured the settlement to guarantee that the Class would receive $70 million and that any award of attorneys' fees would come on top, with Defendants retaining the right to oppose the fee application.

## 2. Delaware Counsel's Fee Application.

Delaware Counsel seeks an award of attorneys' fees in the amount of $27.5 million plus expenses in the amount of $1,002,603.28. They claim the requested fee amount equates to approximately 27.5% of the gross value of settlement (approximately $100 million) after taking into account the requested fee, the expenses incurred by

---

[3] Under the settlement agreement, Leucadia had the option to pay the settlement consideration in cash or freely tradable shares of Leucadia common stock. Leucadia elected to pay the settlement consideration in cash.

Delaware Counsel and an assumed amount of administrative expenses (to be paid by

Defendants).[4]

Defendants acknowledge that Delaware Counsel is entitled to a reasonable fee

award, but argue that their request is excessive. Defendants contend that the fee award

should be calculated as a percentage of the net fund for Jefferies' stockholders ($70

million) rather than as a percentage of the gross value of the settlement. Citing five

recent settlements, Defendants argue that the Court traditionally has awarded attorneys'

fees between 20% and 25% of the value of settlements exceeding $65 million. Focusing

on the midpoint of that range, Defendants suggest that the Court should award $15.75

million (22.5% of the $70 million net settlement fund) plus reasonable expenses.

The present dispute implicates two issues: (1) whether the fee award should be

calculated on a net or gross basis and (2) the appropriate amount of the fee. The first

issue is easily resolved. Although structuring a settlement based on a net recovery may

have the salutary effect of subjecting more fee applications to an adversarial process,[5] the

---

[4] Delaware Counsel's gross value calculation is as follows:

| | |
|---|---|
| Net Distribution to the Class: | $ 70,000,000 |
| Assumed Administrative Expenses: | $ 1,500,000 |
| Requested Fee Award: | $ 27,500,000 |
| Out-of-pocket Expenses: | $ 1,002,603 |
| Total: | $100,002,603 |

[5] In a settlement structured based on an agreed-upon net payment to stockholders (or the corporation in a derivative case) without an agreement on the amount of the maximum

reality is that this Court traditionally has granted fee awards in common fund settlements based on a percentage of the gross settlement value. For example, the fee awards in each of the five settlements exceeding $65 million that Defendants identified were based on the gross value of the settlements. Indeed, Defendants were unable to identify a single case in which this Court made a considered judgment to award a fee based on a percentage of the net recovery that stockholders would receive in a common fund case.[6]

The second issue, the appropriate amount of the fee, involves an exercise of judicial discretion taking into account the *Sugarland* factors, namely: "1) the results achieved; 2) the time and effort of counsel; 3) the relative complexities of the litigation;

---

fee award that defendants will not oppose, as occurred here, defendants have an incentive to oppose fee requests viewed as unreasonable to manage their expected gross financial exposure. By contrast, defendants are usually indifferent as to what percentage of a gross settlement is awarded to plaintiffs' counsel because their exposure is capped at the gross amount. From a policy perspective, it would be beneficial in my view for fee applications to be subject to adversarial inquiry to provide the Court with a better record with which to evaluate the *Sugarland* factors, in particular the quality of the benefit achieved in the proposed settlement and the relative complexity of the case.

[6] At oral argument, Defendants relied on the decision in *Marie Raymond Revocable Trust v. MAT Five LLC,* 980 A.2d 388 (Del. Ch. 2008), as precedent for this Court awarding a fee based on the net amount of a settlement. In that case, the Court approved an application for a fee of $5 million that defendants had agreed to pay in a settlement that resulted in, among other things, the payment of over $38 million to certain investors. The Court noted that the $5 million fee "represents less than 14% of the benefits achieved." *Id.* at 410. The Court, however, did not conduct any analysis and reached no conclusion concerning whether fee awards should be based on the net or gross value of a settlement. It simply mentioned in passing a percentage figure that happened to be based on the net recovery to the investors.

4) any contingency factor; and 5) the standing and ability of counsel involved."[7] The

benefit achieved is the most significant factor.[8]

At a simplistic level, the benefit achieved here, which will result in the payment

of a net amount of $70 million (about $.50 per share) to the Class, is impressive. But the

ultimate quality of that benefit depends on many things. For example, if the business

judgment rule had applied in the case, Plaintiffs presumably would have received no

recovery had they gone to trial, in which case the benefit here would be remarkable. On

the other hand, if the entire fairness standard had applied, the benefit takes on a different

complexion. Plaintiffs' expert estimated that the fair value for a share of Jefferies

common stock as of the merger date was $21.65, which is $4.64 higher than the $17.01

transaction price, meaning that the net recovery in the settlement (about $0.50 per share)

equates to less than 11% of the damages sought.[9] Of course, the settlement was reached

without either side knowing what standard of review ultimately would apply and how

convincing the analyses of their respective financial experts would be after tested by

cross-examination, and with each side making its own risk assessment in that regard.

---

[7] *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1254 (Del. 2012) (citing *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149 (Del. 1980)).

[8] *Id.*

[9] Pls.' Br. in Opp'n to Defs.' Mot. for Summary Judgment Ex. 2 ¶¶ 8, 67. It is estimated that the Class held approximately 139.8 million shares of Jefferies common stock. Thus, a valuation of $21.65 per share would yield approximately $648.7 million in damages.

Recently, in considering a case involving a $275 million derivative recovery that also settled about one month before trial, Vice Chancellor Laster stated that " '[w]hile there are outliers, a typical fee award for a case settling at this stage of the proceeding ranges from 22.5% to 25% of the benefit conferred.' "[10] Recognizing that each case has its own peculiarities, and that there are outliers, this range strikes me as reasonable as a general matter. There should be, in my view, an appreciable difference between the fee award percentage for a pre-trial recovery and a recovery after trial, where fee awards usually max out at one-third of a fund,[11] because of the significant additional risk and investment of resources involved in going to trial and the further exposure of appellate review.

Delaware Counsel, whose standing and ability is not questioned, handled this case on an entirely contingent basis, and expended meaningful but not Herculean efforts litigating this case on a non-expedited basis. They reviewed approximately 16,500 documents comprising approximately 72,000 pages – not monumental in the age of e-

---

[10] *In re Activision Blizzard, Inc. S'holder Litig.*, 2015 WL 2438067, at *38 (Del. Ch. May 21, 2015) (quoting *In re Orchard Enters., Inc. S'holders Litig.*, 2014 WL 4181912, at *8 (Del. Ch. Aug. 22, 2014)) (awarding 22.7% to 24.5% of cash and non-monetary benefits achieved in case involving "complicated legal issues and the need for extensive discovery," including over 800,000 pages of discovery documents and 23 fact depositions taken in a compressed schedule).

[11] *Ams. Mining Corp.*, 51 A.3d at 1259 ("Delaware case law supports a wide range of reasonable percentages for attorneys' fees, but 33% is 'the very top of the range of percentages.' ") (citation omitted).

discovery. Deposition discovery also was manageable. Delaware Counsel took seven fact depositions and one expert deposition in addition to defending the deposition of their own expert. They also successfully briefed two significant motions.[12] As the magnitude of the discovery confirms, the factual issues in the case were not overly complex and, as noted above, the core legal issues in the case were fairly straightforward for professionals who handle cases of this nature.

Taking into account each of the *Sugarland* factors, and placing the greatest weight on the settlement fund that was created as a result of the settlement, in my judgment the appropriate award for this case is $21.5 million, inclusive of expenses. This equates to approximately 23.5% of the gross value (approximately $91.5 million) of the settlement.

---

[12] Delaware Counsel submitted affidavits with their moving papers representing that they spent a total of 9,256.75 hours litigating the case. This total included time incurred in a leadership fight and approximately 367 hours incurred after an agreement-in-principle had been reached on October 31, 2014. In fee application submissions, counsel should differentiate between time spent on a case before an agreement-in-principle to settle has been reached (when counsel is truly at risk) and after an agreement-in-principle has been reached, and should be careful to excise time incurred on matters that provide no benefit to stockholders, such as hours incurred in leadership fights. *See In re BEA Sys., Inc. S'holders Litig.*, 2009 WL 1931641, at *1 (Del. Ch. June 24, 2009) (denying fees for time "spent on aspects of the litigation that produced no benefit"); *Stroud v. Milliken*, 1989 WL 120353, at *4 (Del. Ch. Oct. 6, 1989) ("[T]he reasonableness of the counsel fees must be based on the time actually spent before [the benefit occurred], on those claims which were meritorious when filed.").

### 3. New York Counsel's Motion for a Share of the Fee Award

As noted above, the first action challenging the proposed merger was filed in New York state court. On January 10, 2013, that action was consolidated with two others filed in New York. New York Counsel took a different approach than Delaware Counsel by seeking expedited discovery in aid of an application for a preliminary injunction rather than allowing the transaction to close and pursuing damages.

On January 14, 2013, the New York court granted a motion to expedite the New York action and denied Defendants' cross-motion to dismiss or stay the New York action in favor of the Delaware actions, which were not yet consolidated. On January 17, 2013, the parties to the New York action entered into a stipulated agreement regarding expedited discovery. By January 31, 2013, the discovery contemplated by the stipulated agreement was substantially completed.

On February 13, 2013, with the New York action moving forward on an expedited basis, then-Chancellor Strine granted Defendants' motion to stay the Delaware action pending the outcome of the anticipated injunction proceedings in New York.

After a few weeks of litigation activity, New York Counsel dropped their application for a preliminary injunction after obtaining supplemental disclosures from Jefferies that were disseminated publicly in a Form 8-K dated February 19, 2013, nine days before the stockholder vote on the proposed transaction was held on February 28, 2013. The supplemental disclosures concerned the financial analysis of the proposed

transaction performed by Citigroup. They did not include the disclosure of any additional information concerning the alleged conflicts of interests involving Friedman and Handler that were the focus of the Delaware action. The supplemental disclosures were obtained without the New York Plaintiffs agreeing to a settlement or providing the Defendants with a release from any claims. New York Counsel did not apply for an award of fees in New York for their efforts, and are now precluded from doing so under the terms of the settlement in this action.[13]

On April 2, 2013, then-Chancellor Strine lifted the stay of the Delaware action. Two weeks later, on April 16, 2013, the New York action was stayed in favor of the Delaware action, which proceeded as a damages case along the path described above and resulted in the settlement.

On March 10, 2015, the New York Plaintiffs filed a motion in this Court seeking an award of 20% of the amount of any fees to be awarded to Delaware Counsel.

As the Delaware Supreme Court has explained, "attorneys who litigate in other jurisdictions are entitled to share in a Delaware fee award, 'if their efforts elsewhere conferred a benefit realized as part of the Delaware settlement.' "[14] To be entitled to a

---

[13] Oral Arg. Tr. 85-86 (Mar. 25, 2015).

[14] *Alaska Elec. Pension Fund v. Brown*, 941 A.2d 1011, 1015 (Del. 2007) (quoting *In re Infinity Broadcasting Corp. S'holders Litig.*, 802 A.2d 285, 292 (Del. 2002)).

percentage of the fee in this litigation, the New York Plaintiffs "must substantiate their contribution to the result achieved."[15]

The New York Plaintiffs initially contended that their litigation efforts benefitted the Class by causing the supplemental disclosures in the Form 8-K that Jefferies filed on February 19, 2013. At oral argument, they essentially conceded that these supplemental disclosures are irrelevant to their motion here.[16] That is because, even if one assumes that the supplemental disclosures were material, an issue I have not examined, there is no causal connection between those disclosures and the settlement payment that Delaware Counsel obtained in this action.

The primary basis for the New York Plaintiffs' motion for a share of the fee award in this case is their contention that the "Delaware Plaintiffs' prosecution of their claims relied heavily upon the expedited New York Discovery, which would not have otherwise been available in drafting the Amended Complaint."[17] The expedited discovery the New York Plaintiffs obtained consisted of (1) a production of certain core documents concerning the proposed transaction, including board and transaction committee presentation materials and minutes, and some emails, and (2) depositions New York

---

[15] *Id.*

[16] Oral Arg. Tr. 85 (Mar. 25, 2015).

[17] New York Pls' Br. in Support of Mot. to Award the New York Plaintiffs a Share of Att'ys' Fees and Reimbursement of Expenses at 22.

Counsel had taken of (a) Robert E. Joyal, the chair of Jefferies' transaction committee and (b) David M. Head, the senior member of the team at Citigroup.[18] According to the New York Plaintiffs, but for obtaining access to the expedited discovery that was taken in the New York action, the Delaware Plaintiffs "might well not have survived Defendants' motion to dismiss."[19] In my opinion, the New York Plaintiffs have failed to substantiate that their efforts contributed to the denial of the motion to dismiss in the Delaware action, or otherwise to the results that were achieved in this action.

The operative complaint that was the subject of the motion to dismiss in this action was filed on May 24, 2013. Significantly, the stay of the Delaware action was lifted on April 2, 2013. Thereafter, on April 17, 2013, Defendants produced 3,266 pages of documents they had previously produced in the New York action to Delaware Counsel in response to an outstanding document request.[20] Thus, the reason Delaware Counsel was able to incorporate the contents of these documents into an amended pleading is because the Defendants, who did not seek to stay discovery in the Delaware action pending the resolution of a motion to dismiss, produced them to Delaware Counsel as they were required to do.

---

[18] *Id.* at 5-6.

[19] *Id.*

[20] Victor Aff. Ex. L.

Assuming it is true that having access to these documents improved the quality of the pleading in the Delaware action and assisted Delaware Counsel in defeating the Defendants' motion to dismiss, the fact of the matter is that the New York Plaintiffs made no substantive contribution to that result. Rather, after the stay of the discovery had been lifted in the Delaware action, Delaware Counsel was entitled to and did receive the same underlying documents from the Defendants, which they utilized as they saw fit.

Regarding deposition testimony, the record shows that New York Counsel provided copies of the transcripts of the two depositions they took to Delaware Counsel on May 3, 2013,[21] and that Delaware Counsel cited to one of those transcripts twice in a single paragraph of the amended complaint that was the subject of the motion to dismiss.[22] In denying the motion to dismiss, then-Chancellor Strine made no reference to this paragraph or the testimony cited therein, which testimony did not contribute in any substantive way to the results achieved in the Delaware action in my view.

Finally, the New York Plaintiffs' attempt to take credit for assisting the Plaintiffs here in surviving the motion for summary judgment is frivolous. The summary judgment

---

[21] Reich Affirmation Ex. E. at 1.

[22] The Joyal deposition is cited twice in paragraph 80 of the amended complaint – once for the fact that "Friedman only provided 'general information that discussions [with Leucadia] were underway' " in mid-July 2012, and then for what is essentially a legal conclusion: "Joyal acknowledged in his deposition that the Board should have been told if 'Handler and Friedman were having discussions with Mr. Cumming and Steinberg

motion was presented to me on September 16, 2014, over seventeen months after the stay of the Delaware action had been lifted and after Delaware Counsel had completed full discovery on the merits, including retaking the depositions of the two individuals who had been deposed in the New York action.

For the foregoing reasons, the New York Plaintiffs' motion for a share of the fee award in this action is denied.

IT IS SO ORDERED.

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gp

---

about a possible strategic transaction between Jefferies and Leucadia.' " Am. Compl. ¶ 80.