**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

September 30, 2025

Brian E. Farnan, Esquire
Michael J. Farnan, Esquire
Farnan LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801

Adam V. Orlacchio, Esquire
Anna E. Currier, Esquire
Blank Rome LLP
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801

>     RE:    *Matthew McKnight v. Alliance Entertainment Holding Corp. et al.*,
>            C.A. No. 2023-0383-LWW

Dear Counsel:

This case presents a challenge to a de-SPAC merger. It settled shortly after its filing for $511,000. I approved the settlement but reserved decision on the plaintiff's application for an award of attorneys' fees and expenses.

The plaintiff's counsel seeks a fee equal to 20% of the settlement fund plus expenses. They assert that, though the settlement occurred at the earliest stage, a "small case premium" would be apt. Their request is inconsistent with the policies underlying Delaware's fee-setting jurisprudence. I award plaintiff's counsel a fee equal to 12.5% of the common fund plus their reasonable expenses.

## I.   BACKGROUND

The following facts are drawn from the complaint and cited only for context.[1]

### A.   The Lawsuit

This action concerns the business combination of Adara Acquisition Corp., a special purpose acquisition company (SPAC), and then-private Alliance Entertainment ("Legacy Alliance").

The plaintiff, a former Adara stockholder, claimed that Adara's directors and sponsor breached their fiduciary duties by failing to disclose risks arising after Adara's proxy statement was filed, and "pursuing the de-SPAC [merger] despite Legacy Alliance's highly uncertain future."[2]  Adara did not inform investors until February 13, 2023—after the February 10 closing—that on February 8, Legacy Alliance had received a notice of default from a creditor.[3]

Over 99% of Adara's public stockholders elected to redeem their shares, leaving the SPAC severely undercapitalized.[4]  Adara also neglected to properly

---

[1] Verified Class Action Compl. for Breach of Fiduciary Duties (Dkt. 1) ("Compl.").

[2] *Id.* ¶ 99.

[3] *Id.* ¶¶ 67-69.

[4] *Id.* ¶ 73 (quoting Feb. 13, 2023 Form 8-K).  The plaintiff also alleges that the defendants "did not take into account the interests of the remaining post-redemption investors in Adara." *Id.* ¶ 5.

notify the New York Stock Exchange (NYSE) of the planned business combination.[5]

Thus, after the markets closed on February 10, the NYSE announced that it had begun delisting proceedings for the combined company ("Alliance").[6]

Both the notice of default and delisting decision were announced in Alliance's February 13 Form 8-K.[7] Alliance's stock price plummeted.[8]

A month later, the plaintiff sued in this court.

**B.     The Settlement**

No substantive litigation activity occurred between the filing of the complaint on March 31, 2023 and settlement.[9] On January 9, 2024, the parties filed a stipulation stating that settlement documentation was forthcoming.[10] Five similar stipulations followed, requesting more time to file the settlement papers.[11]

---

[5] *Id.* ¶ 79.

[6] *See id.* ¶¶ 5-6, 69, 76.

[7] *Id.* ¶¶ 73-75.

[8] *Id.* ¶ 80.

[9] The only activity was the filing of three stipulations extending the defendants' time to respond to the complaint.  Dkts. 8, 10, 12.

[10] Dkt. 15.

[11] Dkts. 17, 19, 21, 23, 25.

A stipulation of settlement was filed on August 26, 2024.[12]   An amended stipulation was filed on January 17, 2025.[13]   In May, a settlement brief was filed, stating that the cash settlement "compensate[d] investors for the impairment of their right to make a fully informed decision about whether to redeem their shares of Adara."[14]

After notice was disseminated, a settlement hearing took place on June 17.  I certified a settlement class and approved the settlement and plan of allocation.[15]   I took under advisement plaintiff's counsel's request for a fee and expense award.

## II.   ANALYSIS

When a stockholder's lawsuit creates a common fund benefitting a class, her counsel is generally entitled to an award of attorneys' fees.[16]  The court assesses the reasonableness of a fee using the *Sugarland* factors: "the benefit achieved, the difficulty and complexity of the litigation, the effort expended, the risk-taking, [and]

---

[12] Dkt. 26.

[13] Dkt. 43.

[14] Pl.'s Br. in Supp. of Mot. for Proposed Settlement and Appl. for Att'ys Fees and Expenses (Dkt. 46) ("Pl.'s Settlement Br.") 1.

[15] *See* Dkt. 51.

[16] *See Carlson v. Hallinan*, 925 A.2d 506, 546-47 (Del. Ch. 2006).

the standing and ability of counsel."[17] "The determination of any [fee] award is a matter within the sound judicial discretion of the Court of Chancery."[18]

Here, plaintiff's counsel seeks an award of $102,200, plus $5,088.21 of expenses. This request is unreasonable. Instead, I grant a fee and expense award totaling $68,963.21.

### A. The Benefit Achieved

The benefit achieved is the most important *Sugarland* factor.[19] The size and quality of the benefit anchor the fee analysis. Here, the benefit is a $511,000 cash fund. That fund equates to a gross recovery of $3.06 per non-redeemed share, which the plaintiff asserts is approximately 46.5% of his estimated damages.[20]

---

[17] *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1255 (Del. 2012); *see also Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149-50 (Del. 1980).

[18] *In re Abercrombie & Fitch Co. S'holders Deriv. Litig.*, 886 A.2d 1271, 1273 (Del. 2005) (quoting *In re Infinity Broad. Corp. S'holders Litig.*, 802 A.2d 285, 293 (Del. 2002)).

[19] *See, e.g.*, *In re Nat'l City Corp. S'holders Litig.*, 2009 WL 2425389, at *5 (Del. Ch. July 31, 2009) ("This Court has consistently noted that the most important factor in determining a fee award is the size of the benefit achieved."), *aff'd*, 998 A.2d 851 (Del. 2010) (TABLE); *In re Cox Radio, Inc. S'holders Litig.*, 2010 WL 1806616, at *20 (Del. Ch. May 6, 2010) (noting that the size of the benefit is of "paramount importance" to the *Sugarland* analysis).

[20] Pl.'s Settlement Br. 13. This calculation involves a comparison of the redemption price to the February 13, 2023 closing price. *Id.* at 13 n.17. But post-closing harms are the focus of the complaint. *See supra* notes 5-6 and accompanying text. The per share recovery is also going to a class of just 552 members given the high volume of redemptions. *See* Pl.'s Settlement Br. 22-23; *infra* note 33.

If the benefit is monetary, the court follows a "percentage of the benefit" method.[21]  In *Americas Mining Corp. v. Theriault*, the Delaware Supreme Court noted that attorneys' fees often fall into ranges.  The court observed, as of 2012, that "[w]hen a case settles early, the Court of Chancery tends to award 10-15% of the monetary benefit conferred.  If, however, a case settles after meaningful litigation, the range is typically 15-25%."[22]

This case settled at the earliest stage.  The only non-settlement activity was the filing of the complaint.  Per *Americas Mining*, a fee within the 10-15% range would be standard.  Yet the fee sought here is 20% of the fund.[23]

Counsel strains to justify their ask by appealing to public policy.  They assert that "when plaintiff's counsel obtains a recovery for smaller transactions, counsel

---

[21] *In re Dell Techs. Inc. Class V S'holder Litig.*, 326 A.3d 686, 699 (Del. 2024) (describing that in *Americas Mining*, the court affirmed that when assessing the benefit achieved factor, "the plaintiffs' attorneys 'were entitled to a fair percentage of the benefit'" (quoting *Ams. Mining*, 51 A.3d at 1258)); *Ams. Mining*, 51 A.3d at 1259 ("When the benefit is quantifiable . . . by the creation of a common fund, *Sugarland* calls for an award of attorneys' fees based upon a percentage of the benefit.").

[22] *Dell*, 326 A.3d at 700 (citing *Ams. Mining*, 51 A.3d at 1259-60).

[23] Pl.'s Settlement Br. 32.

should receive a reasonable bump in fees."[24]  That is fair, they suggest, because the court should encourage the plaintiff's bar to police small capitalization companies.[25]

This request for a small case premium draws from a transcript ruling in *In re Harvest Capital Credit Corporation Stockholder Litigation*.[26]  There, the court awarded a 25% fee for an "early[-]stage settlement" in a small-cap case.[27]  Reasoning that "it is tougher to bring cases involving small market cap issuers," the court created a "countervailing incentive" by "elevat[ing] the stage one level," treating an early-stage settlement as if it were mid-stage for fee purposes.[28]

That fact-specific exercise of discretion is readily distinguishable from the present matter.[29]  The settlement in *Harvest Capital* was achieved after substantive litigation, including dispositive motions practice and expedited discovery.[30]  Here,

---

[24] *Id.* at 34 (citing *In re Harvest Cap. Credit Corp. S'holder Litig.*, C.A. No. 2021-0164-JTL, at 31-32 (Del. Ch. July 2, 2024) (TRANSCRIPT)).

[25] *Id.*

[26] *Harvest Cap.*, C.A. No. 2021-0164-JTL, at 31.

[27] *Id.* at 31-32.

[28] *Id.* at 29, 31-32.

[29] *See Seinfeld v. Coker*, 847 A.2d 330, 334 (Del. Ch. 2000) (explaining that awarding fees to "produc[e] appropriate incentives" is "necessarily fact-specific and case-specific"); *Dell*, 326 A.3d at 702-03 (citing the same).

[30] *See Harvest Cap.*, C.A. No. 2021-0164-JTL, at 6 (describing that the plaintiffs received over "75 or 78,000 additional pages of documents"); *id.* at 27 ("The plaintiffs had meaningful claims that survived a motion to dismiss.").  The *Harvest Capital* settlement

no such effort was expended, and the untested claims faced significant hurdles.[31]

Awarding a premium would ignore these critical differences and violate the principle that a fee must correspond with the benefit achieved, effort expended, and risk undertaken.

In fact, I fear that adopting a universal "stage elevation" approach for small matters would create perverse incentives, encouraging marginal suits aimed at extracting rich fees from quick, nuisance-value settlements. It would also conflict with the Delaware Supreme Court's guidance in *Americas Mining* and—more recently—*Dell*. The percentage of the benefit method rewards the assumption of risk and the expenditure of effort. A late-stage settlement warrants a greater recovery because counsel invested more resources while facing the risk of no recovery. To award a higher percentage for small cases would sever the link between risk and reward, incentivizing suits that require the least work rather than the greatest benefit.

Counsel further insists that they should be rewarded because "no other law firms" sued on the merger, which they believe reflects the "undesirable undertaking

---

also represented a 100% recovery of the payment at issue. *Harvest Cap.*, C.A. No. 2021-0164-JTL, at 7.

[31] *See infra* note 33.

this [a]ction involved."[32]  But the absence of competing suits is a double-edged

sword.  It may signal a uniquely difficult case that no other firm dared to pursue.  Or

other firms may have been deterred from investing resources due to a perceived lack

of merit.  More plausibly, other firms were deterred because 99% of stockholders

redeemed, which belies the notion that redemption rights were meaningfully

impaired.[33]

### B.    The Remaining *Sugarland* Factors

The percentage of the benefit is the beginning of a fee analysis, not the end.[34]

The *Americas Mining* ranges are more reference points than rigid barriers.  To apply

them strictly could reduce a fact-specific inquiry to a mechanical formula, bestowing

windfalls for marginal gains or undervaluing exceptional recoveries.  It could also

---

[32] Pl.'s Settlement Br. 34.

[33] The plaintiff's settlement describes the core of his claim as the issuance of a misleading proxy that impaired the exercise of public stockholders' redemption rights.  *See* Pl.'s Settlement Br. 1, 7, 14-15, 23; *supra* note 14 and accompanying text.  If, however, nearly all public stockholders elected to redeem despite the alleged omissions, it is hard to imagine that they lacked the information needed to make a rational economic decision.  The plaintiff also asserts that the "[s]ettlement recovery of $3.06 per share is one of the highest *MultiPlan*-theory settlements in this Court."  *Id.* at 33.  Perhaps this value is higher than average because the near-total stockholder redemptions led to a sharply diminished class size. *See supra* note 20.

[34] *Ams. Mining*, 51 A.3d at 1254 (declining to "adopt an inflexible percentage of the fund approach"); *Dell*, 326 A.3d at 699 (same).

encourage inefficient litigation by prompting plaintiffs' counsel to undertake needless discovery to reach a higher range.

Instead, Delaware courts follow a "flexible, multi-factor approach."[35] The secondary *Sugarland* factors provide a moderating effect, ensuring that the starting percentage is tempered by case-specific considerations. These factors—risk, effort, and complexity—help the court situate a case on a continuum. At one end are complex cases where counsel overcame an unusual risk, navigated novel issues, or obtained an exceptional benefit disproportionate to the hours invested. At the other end are garden-variety suits where a modest result is achieved with little effort. The former may justify a higher percentage; the latter, a lower percentage.

None of the secondary *Sugarland* factors support a fee above the 10-15% range. This case settled before the defendants had even responded to the complaint. Although counsel litigated on a contingent basis, they did not bear the compounding costs associated with discovery, dispositive motions, and trial. The legal theories were straightforward and seemingly inspired by the playbook of prior SPAC fiduciary duty suits.[36]

---

[35] *Seinfeld*, 847 A.2d at 337.

[36] *See generally In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784 (Del. Ch. 2022); *Delman v. GigAcquisitions3, LLC*, 288 A.3d 692 (Del. Ch. 2023).

### C. The Fee Award

A 10-15% range yields a fee between $51,100 and $76,650. The secondary *Sugarland* factors suggest that a fee at the midpoint of the range is more than fair.[37] It appropriately balances the cash benefit counsel achieved through contingent litigation against the limited time, effort, and novelty involved. I will therefore award a fee of $63,875, which is 12.5% of the cash benefit. Counsel is also entitled to reimbursement of their $5,088.21 in litigation expenses. The fee and expense award totals $68,963.21.

As a final check on reasonableness, I attempt to consider the multiplier and implied hourly rate. Plaintiff's counsel reported 167.3 hours and a lodestar of $155,295.[38] Based on those figures, the $63,875 fee implies an hourly rate of $381.80 and a multiplier of .41x. But the numbers are skewed since counsel included time through the date the amended stipulation of settlement was filed.[39]

---

[37] *See supra* Section II.B.

[38] Pl.'s Settlement Br. 39 (citing Tyre-Karp. Aff.; Farnan Decl.).

[39] The parties reached a settlement on January 9, 2024. Dkt. 16. The amended stipulation of settlement was filed over a year later on January 17, 2025. Dkt. 43. I expect that many of the 167.3 hours claimed by counsel relate to post-settlement time, when counsel no longer faced a contingency risk.

The fee is far from a windfall.  Nor is it punitive.  It reflects the reality that this case settled for a modest benefit at the earliest stage with minimal effort or risk.

## III.  CONCLUSION

Counsel is entitled to a fee of $63,875.00 plus reimbursement of $5,088.21 in expenses for a total award of $68,963.21.  This award is aligned with the risk, effort, and result achieved, fulfilling the court's duty to ensure that a common fund recovery is fair to the stockholder class it is meant to benefit.  IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor