**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 28, 2023

Blake A. Bennett, Esquire
Cooch and Taylor, P.A.
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801

Seth D. Rigrodsky, Esquire
Gina M. Serra, Esquire
Herbert W. Mondros, Esquire
Rigrodsky Law, P.A.
300 Delaware Avenue, Suite 210
Wilmington, Delaware 19801

D. McKinley Measley, Esquire
Sebastian Van Oudenallen, Esquire
Morris, Nichols, Arsht &
 Tunnell LLP
1201 N. Market Street
Wilmington, Delaware 19801

RE:     *Schumacher v. Loscalzo, et al.*, C.A. No. 2022-0059-LWW;
        *Cohen v. Loscalzo, et al.*, C.A. No. 2022-0453-LWW

Dear Counsel:

The plaintiffs in the above-referenced actions alleged that non-employee directors of nominal defendant Ionis Pharmaceuticals, Inc. overcompensated themselves relative to the company's peers. The *Schumacher* action was brought first and quickly settled. The *Cohen* action, which followed a books and records demand, commenced after the stipulation of settlement in the *Schumacher* action was filed. Because Cohen was cut out of the *Schumacher* settlement, acrimonious motions practice between the plaintiffs' counsel resulted.

I initially rejected the settlement of the *Schumacher* action because it provided for the release of a claim that only Cohen advanced. The parties recut the settlement and included Cohen. I then approved the revised stipulation of settlement and took the plaintiffs' respective fee applications under advisement. This letter opinion resolves them.

Schumacher's counsel is entitled to a fee and expense award of $282,500. Cohen's counsel is entitled to a fee and expense award of $50,000, but Cohen is not granted an incentive award.

## I.     BACKGROUND

On January 19, 2022, plaintiff Leo Schumacher filed a Verified Stockholder Derivative Complaint (the "*Schumacher* Complaint") in a matter captioned *Schumacher v. Loscalzo, et al.* (the "*Schumacher* Action").[1] The *Schumacher* Complaint brought claims against certain officers and directors of nominal defendant Ionis Pharmaceuticals, Inc. for purportedly excessive director compensation. Schumacher alleged that the members of Ionis's Board of Directors "chose to grossly overcompensate themselves in relation to peer companies of

---

[1] C.A. No. 2022-0059-LWW (Del. Ch.) ("*Schumacher* Action") Dkt. 1 ("*Schumacher* Compl.").

comparable size and market capitalization."[2]   He asserted that Ionis's compensation plan "not only awarded directors well above-market compensation, but . . . also fail[ed] to consider relevant performance metrics that typically influence director compensation, such as the Company's revenue and net income (or, in this case, negative net income)."[3]   He sought to "recoup the excessive compensation" and "to force meaningful corporate governance reforms" that would "restrict the [n]on-[e]mployee [d]irector [d]efendants' ability to award themselves egregious compensation and align the factors driving compensation . . . with the Company's performance and long-term objectives."[4]

The defendants filed a motion to dismiss the *Schumacher* Complaint on March 18.[5]  The motion was never briefed.

On April 21, purported Ionis stockholder Robert S. Cohen filed a letter informing the court that he was pursuing a related books and records demand and

---

[2] *Id.* ¶ 1.

[3] *Id.* ¶ 2.

[4] *Id.* ¶ 5.

[5] *Schumacher* Action Dkt. 9.

asked the court to stay further proceedings in the *Schumacher* action.[6]  Cohen moved to intervene and stay on April 29, which Schumacher opposed on May 3.[7]

On May 24, the parties to the *Schumacher* Action filed a Stipulation and Agreement of Compromise, Settlement and Release (the "Settlement Stipulation").[8]  Cohen was not a party to the Settlement Stipulation.

Heated litigation between Schumacher and Cohen ensued.

On May 25, 2022, Cohen filed a separate Verified Stockholder Derivative Complaint (the "*Cohen* Complaint") in an action captioned *Cohen v. Loscalzo, et al.* (the "*Cohen* Action").[9]  The *Cohen* Complaint advanced claims substantially like those in the *Schumacher* Complaint, with the addition of a claim that Ionis's directors breached their fiduciary duties by failing to disclose material compensation-related information.[10]  Those claims were asserted against the same defendants as those in the *Schumacher* Complaint.

---

[6] *Schumacher* Action Dkt. 10.

[7] *Schumacher* Action Dkts. 12, 15.

[8] *Schumacher* Action Dkt. 17 ("Settlement Stip.").

[9] C.A. No. 2022-0453-LWW (Del. Ch.) ("*Cohen* Action") Dkt. 1 ("*Cohen* Compl.").

[10] *Id.* ¶¶ 51-55, 129-32.

Cohen subsequently moved to consolidate the *Schumacher* Action and the *Cohen* Action.[11] Because the Settlement Stipulation had been filed, I gave Cohen the option of withdrawing his motion to consolidate (understanding that he reserved the right to object to the settlement) or having it held in abeyance pending the settlement hearing.[12] Cohen moved for reargument on June 24.[13] The motion for reargument was denied on July 5.[14]

Also on July 5, I entered a scheduling order setting a settlement hearing in the *Schumacher* Action and providing for notice of that hearing.[15] The next month, Schumacher filed a brief in support of the Settlement Stipulation and requested a $475,000 award of attorneys' fees and expenses.[16]

On August 16, Cohen served interrogatories on Schumacher and the defendants.[17] A week later, the parties to the *Schumacher* Action moved to enforce the court's July 5 scheduling order and to stay the *Cohen* Action.[18] Cohen opposed

---

[11] *Schumacher* Action Dkt. 18; *Cohen* Action Dkt. 3.

[12] *Schumacher* Action Dkt. 21.

[13] *Schumacher* Action Dkt. 24; *Cohen* Action Dkts. 10, 12.

[14] *Schumacher* Action Dkt. 32; *Cohen* Action Dkt. 17.

[15] *Schumacher* Action Dkt. 33.

[16] *Schumacher* Action Dkt. 35 ("Schumacher Br.") at 3.

[17] *Schumacher* Action Dkt. 38.

[18] *Schumacher* Action Dkt. 40; *Cohen* Action Dkt. 23.

the motion. He also moved to compel responses to his interrogatories and to adjourn the settlement hearing in the *Schumacher* Action.[19] The parties to the *Schumacher* Action opposed Cohen's motion.[20]

On September 1, Cohen filed an objection to the proposed settlement of the *Schumacher* Action.[21] He argued that the settlement should be rejected because, among other things, the release was overbroad and Schumacher's counsel displayed a "lack of vigor" in prosecuting the claims.[22] Alternatively, Cohen requested an award of attorneys' fees and expenses for "caus[ing] the production" of Section 220 documents to Schumacher.[23] Schumacher opposed Cohen's objection.[24]

On September 12, I granted the motion to enforce the scheduling order in the *Schumacher* Action and stayed the *Cohen* Action.[25] I also denied Cohen's motion

---

[19] *Schumacher* Action Dkt. 42; *Cohen* Action Dkt. 25.

[20] *Schumacher* Action Dkt. 48; *Cohen* Action Dkt. 31; *see also Schumacher* Action Dkt. 52; *Cohen* Action Dkt. 32.

[21] *Schumacher* Action Dkt. 49.

[22] *Id.* at 25-26, 28-34.

[23] *Id.* at 39-40.

[24] *Schumacher* Action Dkt. 63.

[25] *Schumacher* Action Dkt. 54; *Cohen* Action Dkt. 33.

to compel, except that Cohen was given the opportunity to present argument on his need for objector discovery at the settlement hearing.[26]

The *Schumacher* Action settlement hearing was held on September 21, 2022. I declined to approve the settlement due to the overbreadth of the release, which explicitly included disclosure claims.[27] The *Schumacher* Complaint did not challenge Ionis's disclosures or advance a disclosure claim. But the definition of "Released Claims" in the Settlement Stipulation included claims concerning "any disclosures to stockholders in connection []with" the "compensation Ionis paid to its non-employee directors."[28] I explained that the Delaware Supreme Court had admonished the Court of Chancery to "scrutinize releases to 'ensure that the fiduciary nature of [representative litigation] is respected'" and that the approval of class-based (or derivative) settlements do not "offend due process."[29] The release in the Settlement Stipulation contravened these principles.

On February 7, 2023, the parties to the *Schumacher* and *Cohen* Actions filed a joint Amended Stipulation and Agreement of Compromise, Settlement, and

---

[26] *Schumacher* Action Dkt. 55; *Cohen* Action Dkt. 34.

[27] *Schumacher* Action Dkt. 70 ("Hr'g Tr.") at 61-63.

[28] Settlement Stip. ¶ 1.6.

[29] *Griffith v. Stein*, 283 A.3d 1124, 1134 (Del. 2022) (quoting *In re Celera Corp. S'holders Litig.*, 59 A.3d 418, 434 (Del. 2012)).

Release (the "Amended Settlement Stipulation").[30] The Amended Settlement Stipulation included additional terms related to Ionis's disclosures. It also resolved my prior concerns about the release.

On February 14, Cohen filed a brief in support of the revised settlement and an application for a $75,000 fee award.[31]

On April 24, I entered an Order and Final Judgment approving the settlement and closing the *Schumacher* Action and the *Cohen* Action. Cohen and Schumacher's fee applications were taken under advisement at that time.[32]

## II. ANALYSIS

The Court of Chancery recognizes "the corporate benefit doctrine by which 'the Court may order the payment of counsel fees and related expenses to a plaintiff whose efforts result in . . . the conferring of a corporate benefit.' Such results need not be pecuniary, so long as the litigation produces a substantial benefit to the corporation or its stockholders."[33] Delaware courts look to the *Sugarland* factors when assessing a fee request. These factors include "the benefit

---

[30] *Schumacher* Action Dkt. 72; *Cohen* Action Dkt. 35.

[31] *Schumacher* Action Dkt. 74 ("Cohen Br."); *Cohen* Action Dkt. 37.

[32] *Schumacher* Action Dkt. 77; *Cohen* Action Dkt. 40.

[33] *San Antonio Fire & Police Pension Fund v. Bradbury*, 2010 WL 4273171, at *7 (Del. Ch. Oct. 28, 2010) (quoting *Tandycrafts, Inc. v. Initio P'rs*, 562 A.2d 1162, 1164 (Del. 1989)).

achieved, the difficulty and complexity of the litigation, the effort expended, the risk-taking, [and] the standing and ability of counsel."[34]

Of the *Sugarland* factors, the benefit achieved is generally given the most weight.[35] It is the plaintiffs' burden to establish the value of the claimed benefits and to demonstrate the reasonableness of the amount sought for achieving such benefits.[36] "The determination of any award is a matter within the sound judicial discretion of the Court of Chancery."[37]

### A. Schumacher's Application

Schumacher's counsel seeks a fee and expense award of $475,000 for the therapeutic benefits provided to Ionis through the Settlement Stipulation. The primary benefit is a change to Ionis's Non-Employee Director Compensation Policy:

---

[34] *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1255 (Del. 2012).

[35] *See, e.g.*, *In re Nat'l City Corp. S'holders Litig.*, 2009 WL 2425389, at *5 (Del. Ch. July 31, 2009) ("This Court has consistently noted that the most important factor in determining a fee award is the size of the benefit achieved."), *aff'd*, 998 A.2d 851 (Del. 2010) (TABLE); *In re Cox Radio, Inc. S'holders Litig.*, 2010 WL 1806616, at *20 (Del. Ch. May 6, 2010) (stating that the size of the benefit is of "paramount importance" to the *Sugarland* analysis), *aff'd*, 9 A.3d 475 (2010) (TABLE).

[36] *See Korn v. New Castle Cnty.*, 2007 WL 2981939, at *2, *5 (Del. Ch. Oct. 3, 2007).

[37] *In re Abercrombie & Fitch Co. S'holders Deriv. Litig.*, 886 A.2d 1271, 1273 (Del. 2005) (quoting *In re Infinity Broad. Corp. S'holders Litig.*, 802 A.2d 285, 293 (Del. 2002)).

No incumbent non-employee director shall receive more than $450,000 in annual equity compensation per year (based on the aggregate grant date fair value), and no newly appointed non-employee director shall receive more than $675,000 in initial equity compensation (based on the aggregate grant date fair value).[38]

Three other changes are contemplated to the policy:

1. "The initial equity grant to a new Board member will vest over three (3) years (instead of the current 1-year vest);"

2. "Within two (2) years of adoption of the amended Policy, and through his/her tenure, each non-employee director agrees to hold Ionis equity in an amount no less than five times (5x) the annual base cash retainer;" and

3. "The Compensation Committee will annually review the set of peer companies, with input from the Company's independent compensation consultant."[39]

These terms are to remain in place for three years.

Schumacher asserts that these benefits are worth approximately $4.93 million to $9.29 million to the Company, relying on a report prepared by Cynthia L. Jones, CFA.[40] Jones opines that but for the settlement, Ionis would have paid its ten incumbent directors $500,000 in total equity compensation and "two new directors" $1,000,000 in total equity compensation, resulting in total equity

---

[38] *Schumacher* Action Dkt. 76 ("Governance Enhancements") ¶ 1(a).

[39] *Id.* ¶¶ 1(b)-(d).

[40] Schumacher Br. 24 n.4; *Schumacher* Action Dkt. 36 ("Norton Aff.") Ex. E ("Jones Rep.").

compensation of $7,000,000 per year.[41]  Jones compares that figure to the $450,000 limit on equity compensation set by the settlement multiplied by ten directors, since "the Company agree[d] to maintain the size of the Ionis Board at no more than ten (10) members."[42]

Jones's analysis suffers from numerous problems.[43]  For one, Jones assumes that Ionis will pay each director equity compensation equivalent to the preexisting caps.  But Ionis has previously paid less.  In fiscal 2021, for example, the "grant date fair value of annual awards" to directors "did not exceed $500,000."[44]  For another, Jones's assumption that Ionis would have paid its two new directors $1,000,000 each is unsupported.[45]  Initial equity awards were already limited to 1.5x the amount of annual equity awards, which were capped at $500,000.  Thus, the maximum initial equity award could not exceed $750,000.[46]

---

[41] Jones Rep. ¶ 6.

[42] Governance Enhancements ¶ 2; *see* Jones Rep. ¶ 7.

[43] *Cf. Solak v. Sato*, C.A. No. 2020-0775-JTL, at 45 (Del. Ch. Apr. 21, 2021) (TRANSCRIPT) (rejecting an analysis by Cynthia Jones as "pie-in-the-sky" and not "convincing"); *Alvarado v. Lynch*, C.A. No. 2020-0237-LWW, at 27 (Del. Ch. June 21, 2021) (TRANSCRIPT) (attributing little weight to an analysis by Cynthia Jones, which used the highest median compensation in the relevant time period yielding an "inflated" calculation of the benefit achieved by a settlement).

[44] Ionis Pharmaceuticals, Inc., Schedule 14A, at 67 (Apr. 20, 2022).

[45] Jones Rep. ¶ 6.

[46] Ionis Pharmaceuticals, Inc., Schedule 14A, at 67 (Apr. 20, 2022).

If Ionis were to award the maximum amount of equity compensation in the first year the settlement was in place, the two new directors would receive $75,000 less each and the eight other directors would receive $50,000 less each. This totals to a maximum savings of $550,000 in year one.[47] After that, the maximum savings would be $500,000 for each of year two and year three.[48] Across the three years the settlement terms will be in effect, this equates—at most—to a reduction of $1,550,000 in director equity compensation.

Schumacher's assertion that the settlement supplies a concrete monetary benefit to Ionis is also flawed. The *Schumacher* Complaint alleged that the total non-employee director compensation was excessive—not just equity compensation. Yet the settlement only addresses equity compensation; it does not cap other forms of compensation. It is unclear whether the settlement will meaningfully reduce non-employee director compensation overall.[49]

Even generously accepting this $1,550,000 value, the award sought is extreme. Schumacher's counsel seeks a fee award of $475,000—or 30.6% of the

---

[47] ($500,000 * 8) − ($450,000 * 8) = $400,000 for existing directors. ($750,000 * 2) − ($675,000 * 2) = $150,000 for new directors.

[48] ($500,000 * 10) − ($450,000 * 10) = $500,000 per year.

[49] *Cf. Steinberg v. Casey*, C.A. No. 10190-CB at 35-36 (Del. Ch. Dec. 9, 2015) (TRANSCRIPT) (questioning whether a cap on equity compensation was beneficial where there was no cap on cash compensation, which could allow "leakage" whereby the company could pay additional compensation in cash or another form in the future).

quantifiable benefit. This well exceeds the range supportable for a case that was swiftly resolved.[50] A percentage of the benefit approach (to the extent one is appropriate here) suggests that a fee in the range of $155,000 to $232,500 would be supportable.[51]

The other purported governance enhancements are less significant. Some provide modest improvements aimed at the harms alleged in the *Schumacher* Complaint. Specifically, initial equity awards vesting over three years rather than one and requiring each non-employee director to hold Ionis equity in an amount no less than five times the annual base cash retainer provide only modest reforms.[52] Other purported enhancements concern actions the Board was already taking. For example, the Board had ten members and the Compensation Committee annually reviews Ionis's peer companies with input from a compensation consultant.[53] The final term is for Ionis to disclose "any 'Golden Leash' arrangements,"[54] but it is not

---

[50] *See Ams. Mining Corp.*, 51 A.3d at1260 (explaining, in the context of common fund settlements, that percentages above 25% are "warranted when cases progress to a post-trial adjudication").

[51] *Id.* at 1259 ("When a case settles early, the Court of Chancery tends to award 10-15% of the monetary benefit conferred.").

[52] Governance Enhancements ¶¶ 1(b), (c). The latter term needs only be adopted within two years, meaning that it might be in place for just one year.

[53] *Id.*¶¶ 1(d), 2; *see* Ionis Pharmaceuticals, Inc., Form 10-K, at 89 (Feb. 22, 2023) (listing ten board members).

[54] Governance Enhancements ¶ 3.

apparent how this is different from the Company's current disclosure obligations and policies. These mild therapeutic benefits support a $50,000 fee, bringing the total range to $205,000 to $282,500.

A reduction of the $475,000 sought is also supported by the remaining *Sugarland* factors. The case was low risk, settled early, and was neither difficult nor complicated. It "'offered a ready-made settlement opportunity' and was filed 'with an obvious and well-marked exit in sight.'"[55]

The lodestar of Schumacher's counsel serves as a useful cross-check.[56] Schumacher's counsel at Newman Ferrera LLP incurred 289.7 hours of time on the matter. Although the total does not exclude hours incurred after the Settlement Stipulation was filed, counsel estimates that approximately 90% was pre-signing (or about 260.7 hours).[57] This equates to a lodestar of approximately $200,000. Delaware counsel incurred 16.4 hours of time on the matter, which also does not

---

[55] *Sciabacucchi v. Howley*, 2023 WL 4345406, at *5 (Del. Ch. July 3, 2023) (quoting *In re Emerson Radio S'holder Deriv. Litig.*, 2011 WL 1135006, at *6 (Del. Ch. Mar. 28, 2011)); *see Knight v. Miller*, 2023 WL 3750376, at *7 (Del. Ch. June 1, 2023) ("Since [*Investors Bancorp*], the Court of Chancery has had a steady diet of breach of fiduciary duty suits regarding allegedly excessive director compensation.").

[56] *See Brinckerhoff v. Texas E. Prods. Pipeline Co., LLC*, 986 A.2d 370, 396-97 (Del. Ch. 2010).

[57] Norton Aff. ¶ 74; *see* Hr'g Tr. 39.

segregate time after the Settlement Stipulation was filed.[58]  Assuming the same 90% breakdown (or 14.76 hours), Delaware counsel's lodestar is approximately $11,808—for a total lodestar of $211,808.  A fee at the high end of the range calculated above indicates a multiplier of 1.3x and an hourly rate of $1025.56, which exceeds the highest partner rate billed on the matter.[59]  Expenses total $6,387.78.[60]

For these reasons, Schumacher's counsel is awarded an all-in fee and expense award of $282,500, which is at the top of the calculated range. Considering the lodestar as a cross-check, this fee provides counsel with a premium for their efforts and is generous considering the procedural history and "squishi[ness]" of the settlement benefits.[61]  It is also in line with precedent resolving claims for non-employee director compensation for modest therapeutic benefits.[62]

---

[58] *Schumacher* Action Dkt. 37 ("Bennett Aff.") ¶ 5.

[59] Norton Aff. ¶ 74 (listing the highest partner rate at $950 per hour); *see Howley*, 2023 WL 4345406, at *6 (concluding that an award for the early settlement of an action for therapeutic benefits was appropriate where it "exceed[ed] the billing rate of every attorney representing the plaintiff in th[e] action").

[60] Bennett Aff. ¶ 7; Norton Aff. ¶ 79.

[61] *See Steinberg*, C.A. No. 10190-CB at 36 (describing the settlement as "squishier" than what counsel quantified given the potential for leakage).

[62] *E.g.*, *Sato*, C.A. No. 2020-0775-JTL, at 42-44, 51(awarding $300,000 for "mild" benefits in exchange for the release of claims based on the allegation that non-employee

B.      **Cohen's Application**

Cohen's counsel seeks a separate fee award for the benefits he asserts were achieved through the Amended Settlement Stipulation. These benefits concern the following "disclosure enhancements" that will be addressed in Ionis's annual proxy statements:

1.   "The proxy statements shall disclose (1) if a compensation consultant was retained; (2) the identity of the compensation consultant; (3) any compensation paid to the compensation consultant; and (4) any final written recommendation made by the compensation consultant regarding the amounts of nonemployee director compensation;"

2.   "[T]he proxy statements shall disclose a detailed description of the material terms of the Director Compensation Policy, and the methodology for formulating the new director compensation plan and determining the peer group;"

3.   "The proxy statements shall identify the constituents of the [Company's] [p]eer [g]roup;" and

---

director compensation exceeded the average of the company's peers); *Solak v. Huff*, C.A. No. 2022-0400-LWW, at 38 (Del. Ch. Jan. 11, 2023) (TRANSCRIPT) (awarding $160,000 for reduction in non-employee director compensation). Higher fee awards were granted in certain lawsuits that came earlier in the wave of cases challenging non-employee director compensation and procured meaningful benefits for the nominal defendants. *E.g.*, *In re Salesforce.com, Inc. Deriv. Litig.*, C.A. No. 2018-0922-ABG (Del. Ch. Dec. 17, 2019) (TRANSCRIPT). Such fee awards have trended downward. *Cf. supra* note 55.

4. "The proxy statements shall disclose and explain any compensation paid to non-employee directors outside of the Director Compensation Policy."[63]

These disclosure-related benefits do not "seem to add meaningfully to what the company is already disclosing or needs to disclose."[64] Only two seem to require additional, potentially useful information: the requirements to disclose "any final written recommendation made by the compensation consultant regarding the amounts of non-employee director compensation" and the specifics of how the plan and peer group were formulated.

Cohen requests $75,000 for these benefits (along with a fixed implementation deadline for the settlement benefits).[65] Since—at most—two-thirds of the "disclosure enhancements" seem to modestly improve on what the company was already doing, Cohen's counsel will be awarded a corresponding amount of the fee sought: $50,000. The other *Sugarland* factors support this downward departure for the same reasons addressed regarding Schumacher.[66]

---

[63] Governance Enhancements ¶ 1(e).

[64] *Huff*, C.A. 2022-0400-LWW, at 28.

[65] The original Settlement Stipulation required implementation "as soon as practicable." The Amended Settlement Stipulation requires implementation within 10 business days of the court entering an order & final judgment. It is not apparent whether the two timeframes would have been meaningfully different, and I attribute no weight to this purported benefit.

[66] *See supra* note 55 and accompanying text.

It is not useful to use the lodestar as a cross-check here. Cohen's counsel avers that they spent 450.25 hours litigating the claims.[67] This is undue for a lawsuit brought after the Settlement Stipulation was filed in the *Schumacher Action* and surely includes time that Cohen's counsel spent unnecessarily obfuscating and complicating proceedings.[68]

For similar reasons, I decline Cohen's request for a $1,500 incentive award. Based on my observations, representative plaintiffs have regularly been requesting incentive awards in settlements—despite the "presumption" against such bonuses.[69] Sometimes, an award is appropriate because the plaintiff imparted time and expertise "beyond that provided by a typical plaintiff."[70] Here, Cohen did not undertake efforts above the baseline expected of litigants in this court. He is not

---

[67] Cohen Br. 26.

[68] *See supra* notes 11-20 and accompanying text.

[69] *Raider v. Sunderland*, 2006 WL 75310, at *2 (Del. Ch. Jan. 4, 2006); *Oliver v. Boston Univ.*, 2009 WL 1515607, at *1 (Del. Ch. May 29, 2009) (stating that incentive awards "should be rare" and only granted "in the exceptional case").

[70] *Raider*, 2006 WL 75310, at *2 (awarding a "bonus payment" to a lead plaintiff who "spent over 200 hours of his time on th[e] matter over a period of five years continually communicating with class counsel, investigating independently, providing analysis and expertise, reviewing documents, being deposed, negotiating the class settlement (including active direction and instruction to class counsel) and negotiating class counsel's fees").

entitled to a bonus for "review[ing] all of the pleadings and motions," "sp[eaking] with counsel," and "agree[ing] to the [s]ettlement."[71]

## III. CONCLUSION

Schumacher's counsel is awarded $282,500. Cohen's counsel is awarded $50,000. Cohen's request for an incentive award is denied.

To the extent necessary for this decision to take effect, IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[71] Cohen Br. 28.